Filed 12/22/16

# IN THE SUPREME COURT OF CALIFORNIA

JENNIFER AUGUSTUS et al., )
)
    Plaintiffs and Respondents, )
)         S224853
    v. )
)   Ct.App. 2/1 B243788, B247392
ABM SECURITY SERVICES, INC., )
)      Los Angeles County
    Defendant and Appellant. )   Super. Ct. No. BC336416,
)     BC345918 & CG5444421
_____ )

      We granted review to address two related issues: whether employers are required to permit their employees to take off-duty rest periods under Labor Code section 226.7 and Industrial Welfare Commission (IWC) wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040 (Wage Order 4)), and whether employers may require their employees to remain "on call" during rest periods. What we conclude is that state law prohibits on-duty and on-call rest periods. During required rest periods, employers must relieve their employees of all duties and relinquish any control over how employees spend their break time. (See *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1038-1039 (*Brinker*).)

      Plaintiffs worked as security guards for defendant ABM Security Services, Inc. (ABM). A requirement of employment at ABM was for guards to keep their pagers and radio phones on — even during rest periods — and to remain vigilant

SEE CONCURRING AND DISSENTING OPINION

and responsive to calls when needs arose.  ABM's understanding about the scope of such needs, meanwhile, encompassed a variety of circumstances, including situations where a building tenant wished to be escorted to the parking lot, a building manager had to be notified of a mechanical problem, or the occurrence of some kind of "emergency situation."  Plaintiffs sued ABM, alleging the company failed to provide the rest periods that state law entitles employees to receive.  The trial court granted summary judgment for plaintiffs, finding ABM liable and awarding approximately $90 million — but the Court of Appeal reversed. Because state law requires employers to provide their employees with rest periods that are free from duties or employer control, we reverse the Court of Appeal.

## I. BACKGROUND

ABM employs thousands of security guards at residential, retail, office, and industrial sites throughout California.[1]  While the number of guards at each site varies, the guards' primary responsibility does not:  to provide " 'an immediate and correct response to emergency/life safety situations' " and " 'physical security for the building, its tenants and their employees . . . by observing and reporting all unusual activities.  In essence, [a guard] is the eyes and ears' " of the site.  Specific duties may include patrolling sites, responding to emergencies, identifying and reporting safety issues, providing escorts to parking lots, greeting and assisting tenants and visitors, monitoring and restricting access to sites, directing vehicular traffic and parking, monitoring and occasionally either restricting or assisting in moving property into and out of sites, making reports, and hoisting and lowering flags.

---

[1]     We take the facts from the Court of Appeal's opinion.

2

In 2005, plaintiff Jennifer Augustus filed a putative class action on behalf of all ABM security guards. The trial court subsequently consolidated the matter with similar actions filed by two other ABM guards. Plaintiffs filed a master complaint, which alleged ABM's failure "to consistently provide uninterrupted rest periods" as required by state law. During discovery, ABM acknowledged it did not relieve guards of all duties during rest periods. In particular, ABM required guards to keep their radios and pagers on, remain vigilant, and respond when needs arose, such as escorting tenants to parking lots, notifying building managers of mechanical problems, and responding to emergency situations.

Plaintiffs then moved for summary adjudication of their rest period claim in 2010.[2] It was undisputed, plaintiffs argued, that ABM had a policy of requiring its guards to remain on duty during breaks, and that such a policy violated state law. ABM opposed the motion. The company argued that, if it required anything at all during guards' rest periods, it was merely that guards remain on call — that is, to keep radios and pagers on — *in case* an incident required a response. ABM also offered evidence that class members regularly took breaks uninterrupted by service calls. But the trial court granted plaintiffs' motion, concluding that ABM's policy was to provide guards with rest periods subject to employer control and the obligation to perform certain work-related duties. The court reasoned that a rest period subject to such control was indistinguishable from the rest of a workday; in other words, an on-duty or on-call break is no break at all. The court subsequently granted plaintiffs' motion for summary judgment on damages, awarding approximately $90 million in statutory damages, interest, and penalties.

---

[2] Plaintiffs also alleged ABM failed to provide meal periods as required by state law, but that claim is not at issue here.

3

The Court of Appeal reversed. It agreed that ABM did not relieve guards of all duties during rest periods and instead required that they remain on call, compelling them to keep radios and pagers on and respond when necessary.[3] But the court concluded that state law does not require employers to provide off-duty rest periods, and moreover, "simply being on call" does not constitute performing work. We granted review to consider whether the Court of Appeal was correct in light of Labor Code section 226.7 and Wage Order 4.[4]

## II. DISCUSSION

To answer the questions before us we must interpret both the Labor Code and the IWC wage orders that cover employees in plaintiffs' situation.[5] We review the Court of Appeal's interpretation de novo. (*Mendiola*, *supra*, 60 Cal.4th at p. 840.) When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. (*Brinker*, *supra*, 53 Cal.4th at pp. 1026-1027; *Murphy v. Kenneth Cole*

---

[3] The concurring and dissenting opinion mentions that ABM disputes this characterization of its rest period policy. (Conc. & dis. opn., *post*, at p. 2.) But while ABM contended that it had no blanket on-call policy and advanced this position before both the trial court and the Court of Appeal, it failed to persuade either. Instead, the trial court concluded — and the Court of Appeal accepted — that such a requirement existed, and ABM then elected not to petition the Court of Appeal for rehearing to correct any misstatements of fact.

[4] Subsequent unlabeled statutory references are to the Labor Code.

[5] The IWC is the state agency empowered to promulgate wage orders, which are legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 838 & fn. 6 (*Mendiola*).) Of the 18 wage orders remaining in effect, 16 cover specific industries and occupations, one applies to employees not covered by the industry- and occupation-specific orders, and one is a general minimum wage order. (*Id.* at pp. 838-839.) Wage Order 4, which includes "guards" as a covered occupation along with many other clerical, professional, and service occupations (Wage Order 4, subd. 2(O)), applies here.

*Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 (*Murphy*).) Time and again, we have characterized that purpose as the protection of employees — particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. (*Mendiola*, at p. 840 [" 'to promote employee protection' "]; *Martinez v. Combs* (2010) 49 Cal.4th 35, 53-54 (*Martinez*) [describing the Legislature's concerns]; *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702 (*Industrial Welfare Com.*) [noting the "remedial nature" of legislative enactments and wage orders].) In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees. (E.g., *Brinker*, at pp. 1026-1027; *Murphy*, at p. 1103 ["statutes governing conditions of employment are to be construed broadly"].) In doing so, we accord the IWC's interpretations "considerable judicial deference" (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 801) and take account of interpretations articulated by the Division of Labor Standards Enforcement (DLSE), the state agency that enforces wage orders, for guidance (*Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 668, fn. 5).

### A. Wage Orders and the Labor Code

In 1913, the Legislature established the IWC and — spurred by concerns over inadequate wages and poor working conditions — delegated to the agency authority for setting minimum wages, maximum hours, and working conditions.[6] (*Martinez*, *supra*, 49 Cal.4th at pp. 52-55.) Three years later, the IWC began

---

[6] In its earliest incarnation, the IWC was empowered to regulate only the employment of women and children. (*Industrial Welfare Com.*, *supra*, 27 Cal.3d at p. 700.) In the early 1970s, the Legislature authorized the IWC to regulate the employment of all employees. (*Id.* at p. 701 [explaining courts concluded the prior limitation violated the federal prohibition on sex discrimination].)

issuing industry- and occupation-specific wage orders. Included within one of these was a requirement that employees be provided meal periods. (*Brinker*, *supra*, 53 Cal.4th at p. 1026; *Murphy*, *supra*, 40 Cal.4th at p. 1105.) Sixteen years later, in 1932, the IWC started requiring employers to give employees rest periods as well. (*Murphy*, at p. 1105; see *Kilby v. CVS Pharmacy, Inc.* (2016) 63 Cal.4th 1, 12, fn. 4, quoting IWC order No. 18, Sanitary Regulations for Any Occupation, Trade, or Industry (Feb. 26, 1932) § 12 ["when women are required by the nature of their work to stand, a relief period shall be given every two (2) hours of not less than ten (10) minutes"].) Since then, even as the IWC revised its wage orders from time to time, the rest period obligation remained unchanged. (See, e.g., *Brinker*, at pp. 1028-1029 [discussing amendments to the rest period requirement].) The rest period language in Wage Order 4, subdivision 12(A) first appeared in IWC wage order No. 4-52. (Compare Wage Order 4, subd. 12(A) with IWC wage order No. 4-52, subd. 12 (Aug. 1, 1952).)

Complementing these longstanding wage orders are statutes more recently enacted by the Legislature that also govern wages, hours, and working conditions in California. A case in point is section 226.7, enacted in 2000. As enacted, subdivision (a) provided: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."[7] (Added by Stats. 2000, ch. 876, § 7, p. 6509.)

---

[7] This version of the statute was in effect when plaintiffs filed suit. The Legislature subsequently amended section 226.7 on two occasions (Stats. 2013, ch. 719, § 1; Stats. 2014, ch. 72, § 1), but those revisions are not relevant here. Thus, subsequent references to section 226.7 are to the originally enacted version.

### B. Off-duty Rest Periods

We first resolve whether state law requires employers to authorize off-duty rest periods — that is, time during which an employee is relieved from all work-related duties and free from employer control. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1039-1040 [discussing obligation to provide off-duty meal periods].)

The applicable wage order is what primarily defines the scope of an employer's obligation to provide rest periods. (See *Brinker*, *supra*, 53 Cal.4th at p. 1028.) Accordingly, we begin with the text of Wage Order 4, subdivision 12. (See *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1086 ["The best indicator of [the IWC's] intent is the language of the [wage order] provision itself"].) Subdivision 12(A) provides, in relevant part, "Every employer shall authorize and permit all employees to take rest periods . . . . Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages."[8] In this case, the Court of Appeal concluded that subdivision 12(A) "does not describe the nature of a rest period." Noting that *subdivision 11(A)* requires employees be "relieved of all duty" during meal periods,[9] the court inferred from the absence of

---

[8]     Wage Order 4, subdivision 12(A) also provides that employers must authorize 10 minutes, net rest time per four hours worked; a rest period should fall in the middle of each work period if practicable; and a rest period need not be authorized for employees whose total daily work time is less than three and one-half hours. Subdivision 12(B) provides that failure to comply with subdivision 12(A) obliges employers to pay the employee one hour of pay "for each workday that the rest period is not provided." (See § 226.7, subd. (b) [same remedy].)

[9]     Wage Order 4, subdivision 11(A) provides in part, "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . . Unless the employee is relieved of all duty . . . , the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. . . . [T]he employee may, in writing, revoke the agreement at any time."

similar language in subdivision 12(A) that "no such [off-duty] requirement was intended" for rest periods. We find otherwise.

The reference to a "rest period" in the wage order evokes, quite plainly, a period of rest. In principle, other provisions in the wage order or related statutes could conceivably give us a reason to treat otherwise relatively straightforward words as terms of art. But neither Wage Order 4, subdivision 12(A) nor any other provisions in the wage order give us a reason to conclude that the term "rest period" is imbued with a distinctive, unconventional meaning. The most reasonable inference we can draw from the wage order and its context is instead that we should give the term its most common understanding — a reading consistent with requiring that employers authorize off-duty rest periods. (See *Murphy*, *supra*, 40 Cal.4th at p. 1103 [words generally given their "plain and commonsense meaning"].)

The ordinary meaning of "rest" conveys, in this context, the opposite of work. "Rest" is defined by the American Heritage Dictionary as the "[c]essation of work, exertion, or activity." (American Heritage Dict. (4th ed. 2000) p. 1486, col. 1; accord, Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 1062 [defining "rest" as "freedom from activity or labor"].) So, ordinarily, a reasonable reader would understand "rest period" to mean an interval of time free from labor, work, or any other employment-related duties. (American Heritage Dict., at p. 1307, col. 1 [defining "period" as an "interval of time characterized by the occurrence of a certain condition, event, or phenomenon"].) Indeed, a rest period during which an employer may require that an employee continue performing duties seems to place too much semantic emphasis on "period" — and too little on "rest."

This reading of the wage order is also most consistent with section 226.7. That statute prohibits employers from "requir[ing] any employee *to work* during

8

any meal or rest period . . . ." (§ 226.7, subd. (a), italics added; see *Brinker*, *supra*, 53 Cal.4th at p. 1027 ["To the extent a wage order and a statute overlap, we will seek to harmonize them"].) Moreover, section 226.7's prohibition applies in identical fashion to meal *and* rest periods, with its premium-pay remedy (§ 226.7, subd. (b)) triggered by the failure to provide either. We have explained that during meal periods, employers must "relieve the employee of all duty and relinquish any employer control over the employee and how he or she spends the time." (*Brinker*, at pp. 1038-1039.) It would be difficult to cast aside section 226.7's parallel treatment of meal periods and rest periods and conclude that employers had completely distinct obligations when providing meal and rest periods. What makes sense instead is to infer that employers' responsibilities are the same for meal and rest periods — an inference that also reflects the protective purpose of both. (E.g., *Murphy*, *supra*, 40 Cal.4th at p. 1113 ["[e]mployees denied their rest and meal periods face greater risk of work-related accidents and increased stress"].) Such an inference also proves consistent with the positions taken by both parties at oral argument.

Consider also what the last sentence of Wage Order 4, subdivision 12(A) provides: "Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages." This sentence makes sense only if employees are relieved of duties during rest periods. If employers could require employees to remain on duty during breaks, there would be no reason for the IWC to prohibit deduction of wages for rest periods; time spent performing duties would plainly require payment of wages.[10] And this interpretation is the most

---

[10] Wage Order 4, subdivision 2(K) defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required

*(footnote continued on next page)*

consistent with our practice of liberally construing wage orders. (*Brinker*, *supra*, 53 Cal.4th at p. 1027.)

The Court of Appeal nonetheless concluded that employers may require on-duty rest periods. But this conclusion is difficult to reconcile with Wage Order 4 and section 226.7. The court grounded its conclusion in part on language in Wage Order 4, subdivision 11(A), which pertains to meal periods. That provision requires employers to provide a meal period of not less than 30 minutes once an employee has worked for five hours. (*Brinker*, *supra*, 53 Cal.4th at p. 1039.) But it further states that, "[u]nless the employee is relieved of all duty . . . , the meal period shall be considered an 'on duty' meal period and counted as time worked." (Wage Order 4, subd. 11(A).) The court inferred that the absence of similar "relieved of all duty" language in subdivision 12(A) meant the IWC did not intend to require off-duty rest periods. We find otherwise.

We do so because the *absence* of language in subdivision 12(A) authorizing on-duty rest periods proves far more important than any language in Wage Order 4, subdivision 11(A). The IWC could have allowed on-duty breaks — and did so in subdivision 11(A). Its failure to do so in subdivision 12(A) is a telling indication it did not contemplate on-duty rest periods more generally. (*Lake v. Reed* (1997) 16 Cal.4th 448, 466 [discussing the interpretative canon *expressio unius*].) This is the best interpretation not only because we construe wage order provisions in favor of employees and avoid creating exceptions by implication (see *Mendiola*, *supra*, 60 Cal.4th at p. 847), but also because the contrary

---

*(footnote continued from previous page)*

to do so." Subdivision 4(A) requires every employer to "pay to each employee wages . . . for all hours worked." (See *Mendiola*, *supra*, 60 Cal.4th at p. 839.)

interpretation creates an odd disparity. When there is an on-duty meal period, the employee gains something — wages — he or she would not have received otherwise. But when forced to take on-duty *rest periods*, "an employee essentially performs . . . 'free' work, i.e., the employee receives the same amount of compensation for working through the rest periods that the employee would have received had he or she been permitted to take [off-duty] rest periods." (*Murphy*, *supra*, 40 Cal.4th at p. 1104.)

What also proves important is the on-duty meal period exception in Wage Order 4, subdivision 11(A). That exception is exceedingly narrow, applying only when (1) "the nature of the work prevents an employee from being relieved of all duty" and (2) the employer *and* employee have agreed, in writing, to the on-duty meal period. Even then, the employee retains the right to "revoke the agreement at any time." (*Ibid.*) These narrow terms undercut the argument that the provision creates, by implication, a broad rest period exception permitting employers to unilaterally require that employees take on-duty rest breaks without receiving additional compensation.

Here too, the IWC could have easily varied these rest period obligations. Wage Order 4, subdivision 12 is identical to the rest period provisions of most other wage orders. (E.g., Cal. Code Regs., tit. 8, §§ 11010, 11020, 11030, 11060, 11070, 11080, 11090, 11110, 11130, 11140, 11150 [all containing identical provisions].) But the provision in IWC wage order No. 5-2001 (Wage Order 5) (Cal. Code Regs., tit. 8, §§ 11050, subd. 12) goes further. In addition to the language present in the other wage orders, Wage Order 5 provides, "employees with direct responsibility for children who are under 18 years of age or who are not emancipated from the foster care system and who, in either case, are receiving 24 hour residential care and employees of 24 hour residential care facilities for elderly, blind or developmentally disabled individuals may, without penalty, [be

11

required] *to remain on the premises and maintain general supervision of residents during rest periods if the employee is in sole charge of residents*. Another rest period shall be authorized and permitted by the employer when an employee is *affirmatively required to interrupt his/her break to respond to the needs of residents*." (*Id.*, subd. 12(C), italics added.) This language appears to authorize on-duty rest periods, but only in starkly limited circumstances. (See also Cal. Code Regs., tit. 8, § 11160, subd. 11 [different rest period provision for persons employed in the on-site occupations of construction].) From the absence of similar language in Wage Order 4 we can infer that the IWC's purpose was not to create an exception to the obligation imposed by subdivision 12(A) and section 226.7. (See *Mendiola*, *supra*, 60 Cal.4th at p. 847.)

This inference also proves consistent with the DLSE's own interpretation. As the state agency empowered to enforce wage orders and state labor statutes, the DLSE is in a position to accumulate both knowledge and experience relevant to the administration of wage orders. (*Brinker*, *supra*, 53 Cal.4th at p. 1029 & fn. 11.) While its opinion letters are not controlling, they reflect the type of experience and considered judgment that may properly inform our judgment. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14 (*Yamaha*).) In an advice letter dated February 22, 2002, the DLSE described the scope of an employer's rest period obligation and, in doing so, stated, "there must be a net 10 minutes of rest provided in each 'work period' and the *rest period must be, as the language implies, duty-free*." (Dept. Industrial Relations, DLSE Opn. Letter No. 2002.02.22 (2002) p. 1, italics added.) In a letter dated January 3, 1986, the DLSE noted that the IWC settled on requiring 10 minutes of net rest time after first considering a proposal to require a 15- or 20-minute rest period. (Dept. Industrial Relations, DLSE Opn. Letter No. 1986.01.03 (1986) p. 1.) The DLSE explained that the IWC's purpose "was to insure that the employee *would*

12

*be free from work* for ten minutes . . . ."  (*Ibid.*, italics added; accord, Dept. Industrial Relations, DLSE Opn. Letter No. 1995.06.02 (1995) p. 1 [DLSE focused on amount of "non-work time" in discussing whether employer authorized a sufficiently long rest period].)  The DLSE letters admittedly concern situations distinct from the one before us — but they nonetheless tend to support the conclusion that Wage Order 4, subdivision 12(A) is best understood to require off-duty rest periods.  (See *Faulkinbury v. Boyd & Assoc.* (2013) 216 Cal.App.4th 220, 236 [citing DLSE letters in concluding "[t]here does not appear to be an on-duty rest break exception"].)[11]

In arguing to the contrary, ABM cites minutes of an IWC meeting on May 26, 1952, during which IWC commissioners discussed changes made to the 1952 wage orders.  The minutes indicate that the rest period provision in the wage orders " 'was clarified to indicate . . . that the [IWC] did not intend a completely off-duty rest period to be applicable in the case of an employee who is alone on a shift and has ample time to rest because of the nature of the work.  This would be true in the case of a night switchboard operator on a small board, a night hotel clerk, etc.  If employees in such positions are able to rest on the job it is not intended that the employer provide a special relief employee.' "  (IWC meeting mins. (May 26, 1952) p. 34.)

---

**11**     The concurring and dissenting opinion instead relies on a 1992 DLSE opinion letter, which concluded time spent during a meal break wearing a pager may be noncompensable.  (Conc. & dis. opn., *post*, at p. 6.)  That letter involves a different issue — the compensability of time during otherwise unpaid 30-minute meal breaks.  In *Brinker*, we clarified the meaning of the relevant statutory and wage order provisions.  During meal breaks, we held, employers must relieve employees of all duty and relinquish any control over employees and how they spend their time.  (*Brinker*, *supra*, 53 Cal.4th at pp. 1038-1039.)

13

Precisely what revision this comment referenced is far from clear.  The only relevant change in the 1952 wage orders was the addition of language relieving employers of the need to provide a rest period for shifts of 3.5 hours or less.  The minutes may have simply reflected the IWC members' understanding that an employer was not required to provide a relief employee with break time, or their acknowledgement that an employer remained free to seek an exemption from its expanded rest period obligations.  Since the early 1940s, the wage orders applicable to professional, technical, clerical, and similar occupations — now including Wage Order 4 — have contained provisions that allow employers to request exemptions from certain obligations, including the obligation to provide rest periods.  (E.g., IWC wage order No. 4R, subd. 25 (June 1, 1947); Wage Order 4, subd. 17.)[12]  In 1976, the IWC discussed rest period obligations and, "[i]n response to arguments that in some situations workers are almost continually resting while they monitor machines and cannot be spared from their places," the IWC noted it "provides for the possibility of exemptions in accord with the requirements of Section 18."  (IWC, Statement as to the Basis for Wage Order No. 4-76 (Apr. 25, 1977) p. 29.)

Whatever the meaning of the comment in the 1952 minutes, it does not support the conclusion that the IWC created through its wage orders a default presumption that employers could impose duties on employees during their rest periods.  And we are bound, moreover, to interpret Wage Order 4 and the text of

---

[12]     This remains an option for employers:  Wage Order 4, subdivision 17 provides, "If, in the opinion of the [DLSE] after due investigation, it is found that the enforcement of any provision contained in . . . Section 12, Rest Periods . . . would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer, exemption may be made at the discretion of the [DLSE]."  Indeed, ABM requested, and received, two one-year exemptions from its rest period obligations.  Both have since expired.

14

section 226.7 in light of their broader purpose. We accordingly conclude that the construction of Wage Order 4, subdivision 12(A) that best effectuates the order's purpose and remains true to its provisions is one that obligates employers to permit — and authorizes employees to take — off-duty rest periods. That is, during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1038-1039.)

### C. On-call Rest Periods

We next consider the second question raised by the parties: can an employer satisfy its obligation to relieve employees from duties and employer control during rest periods when the employer nonetheless requires its employees to remain on call? The answer, we conclude, is no — and an analysis of the regulatory framework, as well as the practical realities of rest periods, shows why. Neither Wage Order 4 nor section 226.7 provides a straightforward answer to whether on-call rest periods are permissible. Neither mentions on-call time at all, let alone on-call rest periods. (But see Wage Order 4, subd. 5(D) [providing that reporting-time pay requirements "shall not apply to an employee on paid standby status who is called to perform assigned work"].) Nonetheless, one cannot square the practice of compelling employees to remain at the ready, tethered by time and policy to particular locations or communications devices, with the requirement to relieve employees of all work duties and employer control during 10-minute rest periods.

Although Wage Order 4 is silent as to on-call rest periods, our construction of subdivision 12(A) cannot be reconciled with permitting employers to require employees to remain on call. As we explained, a rest period means an interval of time free from labor, work, or any other employment-related duties. And employees must not only be relieved of work duties, but also be freed from

15

employer control over how they spend their time. (See *Brinker*, *supra*, 53 Cal.4th at pp. 1039-1040.) Given the practical realities of rest periods, an employer cannot satisfy its obligations under Wage Order 4, subdivision 12(A) while requiring that employees remain on call.

Because rest periods are 10 minutes in length (Wage Order 4, subd. 12(A), they impose practical limitations on an employee's movement. That is, during a rest period an employee generally can travel at most five minutes from a work post before returning to make it back on time. Thus, one would expect that employees will ordinarily have to remain onsite or nearby. This constraint, which is of course common to all rest periods, is not sufficient to establish employer control. But now add to this state of affairs the additional constraints imposed by on-call arrangements. Whatever else being on call entails in the context of a required rest break, that status compels employees to remain at the ready and capable of being summoned to action (see, e.g., *Mendiola*, *supra*, 60 Cal.4th at p. 837). Employees forced to remain on call during a 10-minute rest period must fulfill certain duties: carrying a device or otherwise making arrangements so the employer can reach the employee during a break, responding when the employer seeks contact with the employee, and performing other work if the employer so requests. These obligations are irreconcilable with employees' retention of freedom to use rest periods for their own purposes. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 586.)

This very case provides an apt example. The trial court determined it was undisputed that ABM's policy required plaintiffs to keep radios and pagers on, remain vigilant, and respond if the need arose. Given these intersecting realities, on-call rest periods do not satisfy an employer's obligation to relieve employees of all work-related duties and employer control. In the context of a 10-minute break that employers must provide during the work period, a broad and intrusive degree

16

of control exists when an employer requires employees to remain on call and respond during breaks.  (See Wage Order 4, subd. 12(A) [employers must provide a 10-minute rest period per every four hours worked and the break should, whenever practicable, fall in the middle of the work period].)  An employee on call cannot take a brief walk — five minutes out, five minutes back — if at the farthest extent of the walk he or she is not in a position to respond.  Employees similarly cannot use their 10 minutes to take care of other personal matters that require truly uninterrupted time — like pumping breast milk (see § 1030 [regarding use of break time for expressing milk for an infant]) or completing a phone call to arrange child care.  The conclusion that on-call rest periods are impermissible is not only the most logical in light of our construction of Wage Order 4, subdivision 12(A), but is the most consistent with the protective purpose of the Labor Code and wage orders.  (*Murphy*, *supra*, 40 Cal.4th at p. 1105 ["rest periods have long been viewed as part of the remedial worker protection framework"].)  A different result would undermine the rationale underlying the provision of rest periods during the workday.  (*Id.* at p. 1113; *Morillion v. Royal Packing Co.*, *supra*, 22 Cal.4th at p. 586.)[13]

---

**13**     Plaintiffs argue that the on-call break time here constituted compensable work under *Mendiola*, *supra*, 60 Cal.4th 833, so there was no way it could satisfy ABM's obligation to provide duty-free rest periods.  ABM cites *Mendiola* for the opposite proposition.  But *Mendiola* is distinguishable.  For one thing, shifts lasting eight hours (e.g., *Mendiola*) or longer (*Madera Police Officers Assn. v. City of Madera* (1984) 36 Cal.3d 403, 412 [involving 24-hour shifts]) are significantly different from breaks, which are short in duration, break up work periods, and thereby protect employees' health and safety (*Murphy*, *supra*, 40 Cal.4th at p. 1113).  For another thing, factors relevant to the extent of employer control during an on-call shift of eight hours or more are inapposite in the context of a rest or meal period.  (*Mendiola*, at p. 841 [e.g., on-premises living requirement, excessive geographical restrictions, etc.].)

ABM describes this conclusion as "radical." It contends such a rule means that "California law requires an employer to categorically prohibit its employees from ever being recalled to work while they are on rest breaks, regardless of the exigency . . . ." Not so. Nothing in our holding circumscribes an employer's ability to reasonably reschedule a rest period when the need arises. Instead, we address whether employees can be forced to shoulder an affirmative responsibility to remain on call, vigilant, and at the ready during their rest periods. That is what the policy at issue in this case required: employees, the trial court found, were required "to keep their radios and pagers on during rest breaks, to remain vigilant, and to respond when needs arise," including escorting tenants to parking lots and notifying building managers of mechanical problems — responsibilities substantially similar to plaintiffs' ordinary job duties. Such policies conflict with an employer's obligation to provide breaks relieving employees of all work-related duties and employer control.

ABM recognizes that the employer has a break-related obligation to its employees. But it suggests that we define that obligation by distinguishing between, on the one hand, requiring a guard to work and, on the other hand, requiring a guard to remain on duty or on call. It would also have courts determine whether an on-call obligation *unreasonably* interferes with an employee's opportunity to take an uninterrupted rest period. This proposed course would result in less clarity and considerably greater administrative complexities. And it makes for an awkward fit with section 226.7's text, which forbids employers from requiring employees to work during any meal *or* rest period, and Wage Order 4, which requires employers to provide rest periods and explicitly indicates that employees must generally be relieved of all duty during meal periods (Wage Order 4, subd. 11(A)). Several options nonetheless remain available to employers who find it especially burdensome to relieve their

18

employees of all duties during rest periods — including the duty to remain on call. Employers may (a) provide employees with another rest period to replace one that was interrupted, or (b) pay the premium pay set forth in Wage Order 4, subdivision 12(B) and section 226.7.**14** (See *Brinker*, *supra*, 53 Cal.4th at p. 1039.)

What is more, the rest period provision in Wage Order 5 (discussed *ante*, at p. 11) suggests that the IWC was capable of authorizing on-call rest periods in certain circumstances — but did not do so here. The key provision in Wage Order 5 contains the following language: "employees with direct responsibility for children who are under 18 years of age or who are not emancipated from the foster care system and who, in either case, are receiving 24 hour residential care and employees of 24 hour residential care facilities for elderly, blind or developmentally disabled individuals may, without penalty, [be required] to remain on the premises and maintain general supervision of residents during rest periods if the employee is in sole charge of residents. Another rest period shall be authorized and permitted by the employer *when an employee is affirmatively required to interrupt his/her break to respond to the needs of residents*." (Wage Order 5, subd. 12(C), italics added.) That is, Wage Order 5's rest period provision allows, in limited circumstances, employers to require employees to take on-call

_____

**14**    Neither of these options implies that employers may pervasively interrupt scheduled rest periods, for any conceivable reason — or no reason at all. Rather, such options should be the exception rather than the rule, to be used when the employer — because of irregular or unexpected circumstances such as emergencies — has to summon an employee back to work. If an employer seeks to be excused generally from compliance with the obligation to provide rest periods free of all duty and employer control, the employer should avail itself of the opportunity to request from the DLSE an exemption (Wage Order 4, subd. 17), as ABM had previously done on two occasions.

rest periods, remaining ready to assist residents should the need arise. If called into service, the on-call employee is entitled to another rest period. The absence of analogous language in Wage Order 4 is compelling evidence the IWC did not intend to generally permit employers to require employees to remain on call during rest periods. (See *Mendiola*, *supra*, 60 Cal.4th at p. 847.)

### III. CONCLUSION

California law requires employers to relieve their employees of all work-related duties and employer control during 10-minute rest periods. The trial court's summary adjudication and summary judgment orders were premised on this understanding of the law. Rightly so: Wage Order 4, subdivision 12(A) and section 226.7 prohibit on-duty rest periods. What they require instead is that employers relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call. A rest period, in short, must be a period of rest. We accordingly reverse the Court of Appeal's judgment on this issue.


**CUÉLLAR, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

**CONCURRING AND DISSENTING OPINION BY KRUGER, J.**

I agree with the majority that employers must provide off-duty rest periods to nonexempt employees under Industrial Welfare Commission (IWC) wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040 (Wage Order 4)) and Labor Code section 226.7. (Maj. opn., *ante*, at pp. 7–15.) As the majority says, the rest period required by law must be "a period of rest," not a period of work. (*Id.* at p. 21.) But because a bare requirement to carry a radio, phone, pager, or other communications device in case of emergency does not constitute "work" in any relevant sense of the term, I respectfully disagree that such "on call" requirements, without more, are incompatible with an employer's obligation to provide off-duty rest periods under California law. (*Id.* at pp. 15–20.) To the extent the majority believes that the specific on-call policy at issue in this case imposed greater demands on the members of the plaintiff class (see *id.* at pp. 15–17), the record does not support that contention.

We are asked in this case to rule on the validity of a $90 million judgment against ABM Security Services, Inc. (ABM), based on the trial court's determination that ABM deprived its security guards of the rest periods to which they were entitled by maintaining a uniform policy of requiring all of its guards to remain on call during their breaks. Because the term "on call" has no particular fixed meaning, we should be clear about what, precisely, ABM's policy entailed. The trial court concluded, based on the deposition testimony of an ABM senior

1

branch manager, that ABM's policies "make all rest breaks subject to interruption in case of an emergency or in case a guard is needed (for example, when a tenant needs an escort to the parking lot . . . .) Because a guard must be available for these situations, guards must keep their cell phones or pagers on." ABM contends that the deposition testimony in question concerned only a particular subset of its guards — those employed at sites where they were the only guards on duty, a group for whom ABM had earlier sought and received a rest break exemption from the Division of Labor Standards Enforcement (DLSE) — and not all the members of the plaintiff class. But as the Court of Appeal in this case noted, ABM also admitted in discovery that, as a general rule, its " '[g]uards simply must keep their radios or pagers on in case an emergency — fire, flood, criminal activity, medical crisis or bomb threat — should arise to ensure the safety of the facility and its tenants.' " ABM's senior branch manager, moreover, testified that even at multiple-guard sites, "[i]f the magnitude of the emergency was large enough, all security officers would be required to respond." ABM contends that this, too, is an overstatement, pointing to record evidence that at least some of its guards left their radios behind while on break. But the trial court rejected the argument, reasoning that this evidence was not inconsistent with the conclusion that all ABM employees were on call during their rest periods, since "[t]here are many alternatives to the radio for hailing a person back to work: cell phone, pager, fetching, hailing, and so on."

In short, although the parties continue to debate the particulars, the judgment in this case rests on a conclusion that ABM had a uniform policy of requiring all of its guards, at single- and multiple-guard sites alike, to carry a communications device or otherwise remain reachable in case of emergency (or, at least at some sites, in case certain other nonemergent needs arose). But

2

importantly, the record contains no evidence that the rest period of any member of the plaintiff class was ever actually interrupted by a call to return to duty.  Nor does the record contain any evidence concerning how quickly guards were expected to respond if such a call came or to what, if any, discipline a guard might be subject for failing to respond before his or her break period expired.  Finally, the undisputed evidence shows that if any guard's rest period was, in fact, interrupted, he or she would have been permitted to take a full rest period after the situation was resolved.

The question before us thus boils down to whether ABM's requirement that its guards carry a communications device or otherwise remain reachable in case of emergency, standing alone, is incompatible with its legal obligation to provide a rest period that is, as the majority says, a "period of rest."  Under IWC Wage Order 4, subdivision 12(A), which applies to persons employed in various occupations, including security guards, every employer must "authorize and permit all employees to take rest periods . . . .  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."  First promulgated in 1932 to protect the health and safety of California's workers, the rest period requirement has remained largely unchanged since.  (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105; *id.* at p. 1113 ["Employees denied their rest and meal periods face greater risk of work-related accidents and increased stress, especially low-wage workers who often perform manual labor."].)  In 2000, the Legislature reinforced the requirement by enacting Labor Code section 226.7, which currently provides, in relevant part:  "An employer shall not require an employee to work during a meal or rest or recovery period mandated" by an IWC wage order, or else the employer must pay the employee an additional hour's wage.  (Lab. Code, § 226.7, subds. (b) & (c).)

3

Neither of these provisions specifies what a rest period must consist of, other than that it must be what it sounds like: that is, a period during which the employee is not required "to work." (Lab. Code, § 226.7, subd. (b).) As we have recognized, determining whether an employee has been required to "work" during a particular period for purposes of the wage-and-hour laws often, and necessarily, depends on a fact-specific inquiry into the nature of the relevant employment arrangement. (See, e.g., *Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840–841 (*Mendiola*); *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040 (*Brinker*) [what will satisfy an employer's obligation to provide meal breaks "may vary from industry to industry," and "the full range of approaches that in each instance might be sufficient to satisfy the law" cannot be determined in a single proceeding].) To determine whether on-call time constitutes work for which an employee must be paid, for example, our cases have focused on the level of control the employer exercises over its employees during that time and whether that level of control prevents employees from using the time effectively for their own purposes, identifying several case-specific factors that inform that inquiry. (See *Mendiola*, at pp. 840–842 [security guards' on-call time was compensable when the guards were required to reside on site and respond, immediately and in uniform, if contacted by a dispatcher]; cf. *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 583, 587–588 [time spent commuting was compensable when the employer required employees to take employer-provided buses; unlike normal commuting time, the employer compelled and controlled this travel time and prevented employees from using the time for their own purposes].) In *Brinker*, we took a similar approach to evaluating whether an employee has been required to work during a meal period, rendering it an on-duty meal period for which the employee must be paid.

4

(*Brinker*, at pp. 1035–1041.) We agreed with the DLSE that a meal period is not spent on duty — and is therefore not compensable — if employees are free to leave the employer's premises, are relieved of duty, and are permitted to attend to personal business during the meal period. (*Id.* at p. 1036; see also *Madera Police Officers Assn. v. City of Madera* (1984) 36 Cal.3d 403, 412–413 (*Madera Police*) [police officers' meal time was compensable when officers faced disciplinary action if they did not respond to citizen complaints during meal breaks]; *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968, 974–975 [meal periods were spent on duty because the employer required employees to remain at the worksite during meal periods].)

Under this approach, which focuses on whether the employer has imposed restrictions that interfere with the employee's ability to use the time for his or her own purposes, some on-call arrangements will amount to work for purposes of the wage-and-hour laws, while others will not. Thus, as plaintiffs say in their briefs, "a doctor who can have dinner at a restaurant while carrying a pager" is not "working" under any generally accepted understanding of the term, even though there is always a possibility that his or her meal will be interrupted by a call. (See *Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, 522–523 [requirement to wear a pager, combined with other restrictions, did not render on-call time compensable]; cf. *Madera Police*, *supra*, 36 Cal.3d at pp. 411–412 [contrasting compensable meal time with noncompensable on-call time].) Indeed, courts have recognized that the ability to wear a pager may actually "ease restrictions" on an employee, and is thus a factor that generally weighs against treating on-call time as "hours worked" for which the employee must be paid. (*Mendiola*, *supra*, 60 Cal.4th at p. 841.) On the other hand, an employee required to remain at or near a workstation and to provide an instantaneous response in the event of a call

5

remains subject to a degree of employer control that is incompatible with the employee's ability to use the time for his or her own purposes, including to attend to his or her own health and safety needs. Without more, however, a requirement that employees remain reachable (by portable communications device or otherwise) is not "work" for purposes of the wage-and-hour laws.

This is not only the conclusion that follows from our cases, it is also the conclusion of the agency charged with the enforcement of the wage-and-hour laws. (See *Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11 [the DLSE's opinion letters " ' " ' "constitute a body of experience and informed judgment" ' " ' " to which we have frequently turned for guidance in interpreting IWC wage orders].) Although the majority relies on the DLSE's opinion letters as support for the proposition that rest periods, like meal periods, must be "duty free" (maj. opn., *ante*, at pp. 12–13), it curiously neglects the DLSE's view that an employee required to carry a pager has enjoyed a "duty free" meal period unless he or she "*is called upon to respond to the pager*." (Dept. Industrial Relations, DLSE Opn. Letter No. 1992.01.28 (Jan. 28, 1992) p. 4 (DLSE 1992 Letter); see *id.* at p. 3 ["If the employee is simply required to wear a pager or respond to an in-house pager during the meal period there is no presumption that the employee is under the direction or control of the employer so long as no other condition is put upon the employee's conduct during the meal period."]; accord, Dept. Industrial Relations, DLSE Opn. Letter No. 1996.07.12 (July 12, 1996) p. 2; see also Dept. Industrial Relations, DLSE Opn. Letter No. 1998.12.28 (Dec. 28, 1998) p. 4 ["Of course, the simple requirement that the employee wear a beeper and respond to calls, without more, is not so inherently intrusive as to require a finding that the

6

employee is subject to the employer's control so as to require the employee be paid for all hours the beeper is worn."].)**1**

In a marked departure from the approach we have taken in prior cases concerning whether on-call time counts as work, and in sharp contrast to the DLSE's views about what constitutes a duty-free break, the majority in this case appears to conclude that a requirement to remain reachable by pager, phone, or other portable communications device, without more, is inherently incompatible with the requirement to provide a duty-free rest period — even if the pager never sounds or the phone never rings. Given the "practical realities of rest periods," the majority reasons (maj. opn., *ante*, at p. 15), such a requirement is "irreconcilable with employees' retention of freedom to use rest periods for their own purposes" and represents a "broad and intrusive degree of control" over how employees spend their time. (*Id*. at p. 16–17.) The majority asserts: "An employee on call cannot take a brief walk — five minutes out, five minutes back — if at the farthest extent of the walk he or she is not in a position to respond. Employees similarly cannot use their 10 minutes to take care of other personal matters that require truly uninterrupted time — like pumping breast milk [citation] or completing a phone call to arrange child care." (*Id.* at p. 17.)

---

**1** If the majority means to suggest that *Brinker*'s adoption of a "relieved of all duty" standard for unpaid meal periods somehow renders the DLSE 1992 Letter irrelevant to the inquiry now before us (see maj. opn., *ante*, p. 13, fn. 11), it bears mention that the "relieved of all duty" standard did not originate from our opinion in *Brinker*, but from the text of the very same IWC wage orders that the DLSE interpreted in the 1992 letter. (See DLSE 1992 Letter at pp. 3–4.) Nothing in *Brinker* calls into question the DLSE's conclusion that an employee required to carry a pager during a meal period has enjoyed a duty-free meal period unless he or she is called to respond to the pager.

If all on-call policies necessarily had these effects, I might well agree that on-call rest breaks are categorically impermissible, as the majority's reasoning suggests. But there is no reason to believe that the bare requirement to carry a radio, phone, or pager necessarily prevents employees from taking brief walks, making phone calls, or otherwise using their rest breaks for their own purposes, and certainly there is no evidence in this record to that effect. The record, rather, shows the opposite: Members of the plaintiff class *did* use their rest periods to walk to various nearby destinations and to engage in other leisure activities such as smoking, reading, and surfing the Internet. Nor does the record contain evidence that employees were prevented from using their 10-minute breaks to take care of personal matters that required uninterrupted time — perhaps unsurprisingly, given that the record contains no evidence that any employee's break was ever interrupted. This evidence, or lack thereof, may not be entirely dispositive of the case before us, but it certainly dispels any notion that the nature of an on-call rest period arrangement is by its very nature "irreconcilable" with the obligation to provide a period of rest that an employee may use effectively for his or her own purposes.[2]

---

[2] It is true that IWC wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050 (Wage Order 5)), unlike Wage Order 4, expressly "allows, in limited circumstances, employers to require employees to take on-call rest periods." (Maj. opn., *ante*, at pp. 19–20.) Specifically, Wage Order 5, subdivision 12(C), permits certain residential care facilities, without penalty, to "require an employee to remain on the premises and maintain general supervision of residents during rest periods if the employee is in sole charge of residents." Absent this provision, a policy requiring employees to remain on site and maintain general supervision of residents during rest breaks would be plainly incompatible with the employer's obligation to relieve employees of all duties during rest breaks. Unlike the majority, I do not understand this special exception to imply that on-call rest break policies that are less intrusive than those specifically allowed by Wage Order 5, subdivision 12(C), are categorically prohibited by Wage Order 4.

The best that can be said for this kind of categorical approach to on-call rest breaks is that by employing a conclusive (if factually unsupported) assumption that on-call rest period policies inherently subject an employee to "broad and intrusive" employer control, the majority's rule prevents employers from abusing on-call policies by regularly interrupting off-duty employees with calls to perform their job duties. But this is a solution in search of a problem. No one disputes that an employer that regularly interrupts its employees with demands requiring their immediate attention has, in fact, required its employees to work. (Cf., e.g., *Mendiola*, *supra*, 60 Cal.4th at p. 841 ["whether the frequency of calls was unduly restrictive" is a factor in determining whether on-call time is compensable]; *Ruffin v. MotorCity Casino* (6th Cir. 2015) 775 F.3d 807, 813 [in determining whether an on-call employee has been required to work through a meal break, a "factor to consider is whether the employer's business regularly interrupts the employee's meal period"].) On the other hand, as the majority must acknowledge, this categorical approach has heavy costs. The majority seeks to reassure employers that they may, at least in cases of genuine emergency, recall an employee from his or her rest break, as long as they reschedule the break or pay the employee premium pay (maj. opn., *ante*, at pp. 18–19 & fn. 14). But the practical effect of a categorical ban on requiring an employee to carry a pager or other portable communications device is to deprive the employer of any sure *means* of reaching the employee, even if a truly extraordinary situation requires it. Such a categorical rule thereby secures a benefit that many employees would not regard as particularly significant — the ability to leave a silent pager or phone behind for 10 minutes at a time — at the substantial cost of denying employers of the means to contact their employees in case of urgent need.

9

But perhaps the majority does not mean to craft a rule as categorical as its opinion sounds. Further seeking to assuage concerns about the practical implications of the ruling, the majority tells us that this case concerns only "whether employees can be forced to shoulder an affirmative responsibility to remain on call, vigilant, and at the ready during their rest periods." (Maj. opn., *ante*, at p. 18.) But if the purported requirements to remain "vigilant" and "at the ready" are what pushes ABM's on-call policy over the line, then we ought to at least be clear about what those terms mean, to whom these requirements apply, and, most importantly, to what extent the requirements interfered with plaintiffs' ability to use rest periods for their own purposes.[3] The terms "vigilant" and "at the ready," like the term "on call," have no particular fixed meaning; they have been used to describe a wide variety of employment-related requirements. (Compare *Bobo v. U.S.* (1997) 37 Fed.Cl. 690, 690–691, 698–703 [border patrol agent's "constant state of vigilance while commuting" did not convert commuting time into compensable work] with *Pellino v. Brink's Inc.* (Wash.Ct.App. 2011) 267 P.3d 383, 393–394 & fn. 8 [armored car guards were compelled to remain vigilant during breaks, which required " 'active observation and mental exertion at all times,' " and deprived guards of lawful rest periods].) It is, moreover, unclear to whom these requirements might have applied. The notion that ABM's policy required its guards to remain "vigilant" and "at the ready" during their rest

---

[3] Of course, I agree with the majority that where an employee's rest break is actually interrupted by the employer, the employer owes the employee a full, uninterrupted rest break or premium pay. (See maj. opn., *ante*, at pp. 18–19; Lab. Code, § 226.7, subd. (c); Wage Order 4, subd. 12(B).) In evaluating the on-call policy at issue here, the key question is whether the existence of the policy, apart from any actual interruption, prevented the employee from using rest breaks for his or her own purposes.

periods seems to have originated in the portion of the Court of Appeal opinion summarizing a discovery admission by ABM and the deposition testimony of ABM's senior branch manager that guards were expected to remain reachable in case a guard was needed, whether in an emergency or nonemergency situation. As noted above, ABM contends this testimony related specifically to guards at single-guard sites for which it had earlier sought a rest break exemption from the DLSE. The Court of Appeal's opinion did not refute the point, but simply considered it irrelevant, because, in its view, the evidence supported the conclusion that *all* guards, including those at multiple-guard sites, would be expected to remain reachable in the event of an emergency of sufficient magnitude.[4] And as noted, it was this requirement to remain reachable, standing

---

[4] Plaintiffs argue that ABM has acquiesced in the Court of Appeal's statement that "ABM admitted it requires its security guards to keep their radios and pagers on during rest breaks, to remain vigilant, and to respond when needs arise" because it did not call any misstatement to the Court of Appeal's attention by way of a petition for rehearing. (See Cal. Rules of Court, rule 8.500(c).) But the Court of Appeal's opinion also described what that meant. In a portion of its decision not at issue here, the Court of Appeal upheld the trial court's class certification determination because it "could reasonably conclude ABM possessed a uniform policy of requiring its security guards to remain on call during their rest breaks." As support, the Court of Appeal cited only ABM's admission that " '[g]uards simply must keep their radios or pagers on in case an emergency — fire, flood, criminal activity, medical crisis or bomb threat — should arise to ensure the safety of the facility and its tenants' " and the deposition testimony that "[i]f the magnitude of the emergency was large enough, all security officers would be required to respond regardless of what they were doing at the time." That is, the only classwide policy the Court of Appeal identified as supporting the trial court's classwide damages award was a policy requiring guards to carry a communications device and respond in case of emergency. (Moreover, as noted in fn. 5, *post*, the Court of Appeal acknowledged ABM's argument that it did not uniformly apply its on-call policy.) We should not read too much into the Court of Appeal's casual characterization of this policy as one requiring guards to be "vigilant," particularly when the Court of Appeal's opinion neither explained

*(footnote continued on next page)*

11

alone, on which the trial court determined that ABM was liable to the entire plaintiff class; the trial court ruled the mere possibility that a guard could be recalled from break served to invalidate all rest periods provided, even in the absence of evidence that guards' breaks were ever interrupted or that ABM's on-call policy prevented guards from using their rest breaks for their own purposes. If the majority believes that there was something more to ABM's policies — that ABM imposed some greater burdens on the guards' use of their rest breaks — then the appropriate course would be to remand for consideration of that issue in light of any appropriate factual development, rather than making unsupported assumptions about the state of the record based on vague language used in an excerpt of the Court of Appeal's opinion.

Ultimately, as this case currently stands, we simply do not have enough information to conclude that the particular on-call policy at issue in this case prevented members of the plaintiff class from using their rest breaks for their own purposes. The information we do have suggests the opposite. Thus, while I agree with the majority that an employer must relieve employees of their duties during rest breaks, I see no adequate basis for upholding a $90 million judgment that was premised on the incorrect assumption that a person who is "on call" — that is, who has been required to carry a radio, pager, or phone, or to otherwise remain reachable in case of emergency — is necessarily also "on duty." We should instead reverse and remand for consideration of whether ABM's on-call policy

_(footnote continued from previous page)_

what it meant by the term nor appeared to understand the vigilance requirement as the basis for the trial court's finding of classwide liability.

12

actually interfered with its employees' ability to use their rest periods as periods of rest.[5]

**KRUGER, J.**

**I CONCUR:**

**CORRIGAN, J.**

---

**5**    Setting aside, for the moment, my disagreement with the majority on this point, I would note that the Court of Appeal recognized that ABM had cited substantial evidence indicating that its on-call policy was not uniformly applied, but concluded that "such evidence would go only to the issue of damages." In other words, if the Court of Appeal had upheld the trial court's ruling finding ABM liable for damages — it, of course, did not — it nonetheless would have reversed the trial court's grant of summary judgment because the trial court's damages award was premised on the legal invalidity of *all* rest breaks taken by members of the plaintiff class. Nothing in today's opinion calls into question that part of the Court of Appeal's decision. Thus, ABM should, at a minimum, have the opportunity to mitigate its damages by showing it did not uniformly apply a noncompliant rest break policy.

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Augustus v. ABM Security Services, Inc.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 233 Cal.App.4th 1065
**Rehearing Granted**

_____

**Opinion No.** S224853
**Date Filed:** December 22, 2016
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Carolyn B. Kuhl and John Shepard Wiley, Jr.

_____

**Counsel:**

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Theane Evangelis, Andrew G. Pappas, Bradley J. Hamburger; Littler Mendelson, Keith A. Jacoby and Dominic J. Messiha for Defendant and Appellant.

Seyfarth Shaw, Jeffrey A. Berman, James M. Harris and Kiran A. Seldon for Employers Group as Amicus Curiae on behalf of Defendant and Appellant.

Paul Hastings and Paul Grossman for California Employment Law Council as Amicus Curiae on behalf of Defendant and Appellant.

Carothers DiSante & Freudenberger and Robin E. Largent for National Association of Security Companies as Amicus Curiae on behalf of Defendant and Appellant.

Thompson & Knight and David R. Ongaro as Amici Curiae on behalf of Defendant and Appellant.

Horvitz & Levy, John A. Taylor, Jr., Robert H. Wright, Felix Shafir and Shane H. McKenzie for Chamber of Commerce of the United States of America and National Association of Manufacturers as Amici Curiae on behalf of Defendant and Appellant.

Shaw Valenza and D. Gregory Valenza for California Chamber of Commerce and California Building Industry Association as Amici Curiae on behalf of Defendant and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Robert A. Jones, Robert R. Roginson and Kathleen J. Choi for National Armored Car Association and Independent Armored Car Operators Association, Inc., as Amici Curiae on behalf of Defendant and Appellant.

Roxborough, Pomerance, Nye & Adreani, Drew E. Pomerance, Michael B Adreani, Marina N. Vitek; The Ehrlich Law Firm, Jeffrey Isaac Ehrlich; Initiative Legal Group, Monica Balderrama, G. Arthur Meneses; Scott Cole & Associates, Scott Edward Cole, Matthew R. Bainer; Law Offices of Alvin L Pittman and Alvin L. Pittman for Plaintiffs and Respondents.

**Page 2 – S0224853 – counsel continued**

**Counsel:**

Law Offices of Louis Benowitz and Louis Benowitz for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Respondents.

The Turley Law Firm, William Turley and David T. Mara for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Respondents.

Hina B. Shah for Women's Employment Rights Clinic of Golden Gate University School of Law, Asian Americans Advancing Justice-Asian Law Caucus, Asian Americans Advancing Justice-Los Angeles, Centro Legal de La Raza, Chinese Progressive Association, Legal Aid Society-Employment Law Center, National Employment Law Project, National Lawyers Guild-Labor and Employment Committee, San Francisco Progressive Workers Alliance, Wage Justice Center and Worksafe, Inc., as Amici Curiae on behalf of Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Theodore J. Boutrous, Jr.
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000

Drew E. Pomerance
Roxborough, Pomerance, Nye & Adreani
5820 Canoga Avenue, Suite 250
Woodland Hills, CA  91367
(818) 992-9999