Filed 4/25/17; pub. & mod. order 5/24/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAURA BARTONI, et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br><br>AMERICAN MEDICAL RESPONSE WEST,<br><br>        Defendant and Respondent. | A143784<br><br>(Alameda County<br>Super. Ct. No. RG 08382130) |

Current and former employees of an ambulance service company sued their employer, alleging that its meal and rest period policies violate California law. Their complaint alleges claims on behalf of a proposed class as well as non-class claims concerning those same meal and rest period policies under Labor Code section 2698 et seq., the Private Attorneys General Act of 2004 (PAGA).

Before us is plaintiffs' appeal of the trial court's denial of their motion for class certification. The appeal raises two issues. First, is the order denying class certification appealable under the "death knell" doctrine, where plaintiffs' PAGA claims remain pending? Second, did the trial court err in denying class certification? We will exercise our discretion to treat the appeal as a writ petition, and therefore we need not decide the first question. We conclude that the trial court's denial of class certification rests in part on an incorrect legal assumption about the nature of rest periods, and therefore we will remand part of the matter for further consideration.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant American Medical Response West (AMR) provides ambulance services in more than 15 Northern California counties, and employs dispatchers, call takers, drivers, emergency medical technicians (EMT's), paramedics and nurses. Plaintiffs are four of AMR's current or former employees: dispatcher Laura Bartoni, EMT Cameron Francis, dispatcher and EMT Heather Murray, and EMT Jefferson Todd Willhoyte (collectively, plaintiffs).

The gravamen of the operative Third Amended Complaint is that AMR failed to provide the meal and rest periods to which plaintiffs are entitled under Labor Code sections 226.7 and 512 and the applicable wage orders issued by the California Industrial Welfare Commission (IWC).[1] Plaintiffs allege three causes of action: first, a class claim under the Labor Code; second, a class claim under Business and Professions Code section 17200 et seq., the Unfair Competition Law (UCL); and third, a claim for civil penalties under PAGA.[2] The PAGA cause of action is a representative action not subject to class action requirements.[3] (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 975 (*Arias*).)

Plaintiffs moved to certify a class for their first two causes of action. The proposed class includes AMR's employees in various Northern California locations who

---

[1] The IWC "is the state agency empowered to formulate wage orders governing employment in California. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561.) The Legislature defunded the IWC in 2004, however its wage orders remain in effect. (*Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 902, fn. 2.)" (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102, fn. 4.) Wage and hour claims like the ones at issue here are governed by the Labor Code and IWC wage orders. (See *Brinker Restaurant Corp v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).) Plaintiffs bring their claims under subdivisions 11 and 12 of Wage Order 9-2001, codified in the California Code of Regulations at title 8, section 11090.

[2] The Third Amended Complaint also alleged failure to pay overtime wages. The overtime claims were dismissed with prejudice pursuant to stipulation.

[3] PAGA claims may be brought as class actions, but need not be. (*Arias*, *supra*, 46 Cal.4th at p. 981 fn. 5.) Plaintiffs here have not alleged their PAGA claim as a class action.

were covered by any of a succession of collective bargaining agreements from 2004 onward. Plaintiffs argued that these collective bargaining agreements contain employment policies that apply to all class members, including a policy requiring class members to remain on duty and subject to interruption during all meal periods, a policy that does not permit off-duty rest periods, and policies that do not comply with requirements for the accrual, timing, and duration of meal and rest periods.

The proposed class encompasses two subclasses: the Communication Center Employee Subclass, which includes dispatchers and call takers, and the Field Employee Subclass, which includes EMT's, paramedics, nurses and drivers. We adopt the trial court's convention and refer to the Communication Center Employee Subclass as the "Comm Center Class" and to the Field Employee Subclass as the "Field Employee Class."[4] As of May 2013, AMR had identified approximately 400 potential members of the Comm Center Class and 5,200 potential members of the Field Employees Class.

_____

[4] The Comm Center Class includes "[a]ll individuals currently or formerly employed by [AMR] as dispatchers and/or call takers at any time from April 16, 2004, until resolution of this action, on a full-time or part-time basis, in one or more of the following Counties in California: Monterey, Tulare, Santa Cruz, Santa Clara, San Mateo, Stanislaus (excluding Turlock Operations), Alameda, San Francisco, Contra Costa, San Joaquin (excluding Tracy Operations), Calaveras, Marin, Solano, Sonoma, Yolo, Sacramento, Placer, and Shasta." Bartoni and Murray are proposed as representatives of the Comm Center Class. From 1998 to November 2012, Bartoni worked as a dispatcher at the Burlingame communications center, and Murray was employed from April 2000 to some time before 2012 as a dispatcher at the Burlingame communications center.

The Field Employee Class includes "[a]ll individuals currently or formerly employed by [AMR] at any time from June 23, 2004, until resolution of this action, on a full-time or part-time basis, in one or more of the following positions and Counties in California: [¶] [1] For the entire class period: [¶] EMT-1s, EMT-2s, EMT-Ps, Drivers, and Wheelchair Van Drivers in Monterey, Tulare, Santa Cruz, Santa Clara, San Mateo (excluding EMT-Ps), Stanislaus (excluding Turlock Operations), Alameda, San Francisco, Contra Costa, San Joaquin (excluding Tracy Operations), Calaveras, Marin, Solano, Sonoma, Yolo, Sacramento, Placer, and Shasta counties. [¶] [2] For the period from July 1, 2006 to the end of the class period: [¶] EMT-1s and Paramedics in San Benito County; [¶] CCTs and EMT/CCTs in Alameda, Contra Costa, San Mateo, and Yolo Counties; [¶] Paramedic CCTs in Contra Costa, Monterey, Placer, Sacramento, San Joaquin, Calaveras, and Santa Clara Counties; [¶] RNs and CCT/RNs employed in

3

Plaintiffs supported their motion with their own declarations, but not declarations from any other potential class members; excerpts from the depositions of individuals designated by AMR to testify as to various issues; copies of collective bargaining agreements and agreements for on-duty meal periods; documents reflecting AMR's policies and procedures; excerpts from AMR's responses to discovery requests; a printout from AMR's web site, and a stipulation about the use and contents of the on-duty meal period agreement that class members signed.[5]

AMR opposed plaintiffs' motion on multiple grounds. Among other things, it argued that plaintiffs failed to identify class-wide policies regarding meal and rest periods that are consistently applied. AMR also argued that because the proposed classes include field employees working in 18 different geographic operations and employees working in 5 different communications centers, which have different approaches to meal and rest

Alameda, Contra Costa, Monterey, Sacramento, Santa Clara, and Sonoma Counties. [¶] [3] For the period from July 1, 2008 to the end of the class period: [¶] EMT-2s, EMT-Ps, Drivers, and Wheelchair Van Drivers in San Benito County." Francis, Murray and Wilhoyte are proposed as representatives of the Field Employees Class. Francis was employed from January 2002 to November 2009 as an EMT in Alameda County, Murray was employed from sometime after April 2000 to April 2012 as an EMT based in Santa Clara and Contra Costa Counties, and Willhoyte was employed from January 1987 until at least December 2013 as an EMT.

Plaintiffs concede that they cannot represent employees who worked solely under the collective bargaining agreement that has been in effect in Monterey since 2010.

[5] The parties stipulated that throughout the class period, AMR's practice was to request that all putative class members sign on-duty meal period agreements with the following language: "It is hereby agreed between [AMR] and the Employee signing below that the nature of AMR's business prevents Employee from being relieved of all duty during meal periods. Accordingly, it is further agreed that Employee's meal periods shall be considered on-duty meal periods and shall be counted as time worked for all purposes, including payment of regular and overtime compensation. [¶] I certify that I have read and understand the above information and agree to these conditions of my pay. I enter into this authorization and agreement freely and voluntarily. I understand that I may revoke this agreement in writing at any time. Revocation will be effective from the date received. I further understand, that the revocation of this agreement may limit my scheduling opportunities as the nature of . . . AMR's business prevents employees from being relieved of all duty during meal periods."

4

periods, plaintiffs cannot show that issues of law or fact common to the class predominate, and therefore cannot establish the existence of a community of interest, a requirement for class certification.

AMR presented declarations from potential class members who described their varied experiences as to when and how they took meal and rest periods; deposition testimony from the plaintiffs describing their experiences in taking meal and rest periods; and declarations and policy documents describing the variety of operations and practices across the 18 operating units and 5 communications centers covered by the proposed class, including practices regarding meal and rest periods. At AMR's request, the trial court took judicial notice of orders denying class certification in other cases, including cases filed against AMR, "but only as to the existence of these trial court decisions." The trial court also took judicial notice of materials prepared by the Division of Labor Standards Enforcement (DLSE), which is the state agency empowered to enforce California's labor laws, including IWC wage orders. (Lab. Code, §§ 61, 95; *Brinker, supra,* 53 Cal.4th at p. 1029, fn. 11.)

The trial court's thorough and thoughtful consideration of the certification issues here is shown in its request for supplemental briefing from the parties on the possible impact on this case of *Duran v. U.S. Bank National Association* (2014) 59 Cal.4th 1 (*Duran*), which held that "[c]lass certification is appropriate only if . . . individual questions can be managed with an appropriate trial plan." (*Id.* at p. 27.) The trial court also directed plaintiffs to present a proposed trial plan.

Then, after the parties submitted the material requested, the court requested further supplemental briefing, and directed plaintiffs to " '(1) clearly articulate each of AMR's policies that are being challenged in this action, (2) clearly articulate why and in what way each of the challenged policies in unlawful, and (3) clearly articulate either (a) the manner in which each of the challenged policies could be modified to make it lawful, or (b) a lawful alternative policy that would be suitable to those of AMR's operations in which the putative members of both classes work.' " In response to this second request for supplemental briefing, plaintiffs identified 11 policies.

5

The first is AMR's uniform policy of providing only on-duty meal periods to members of both classes. Plaintiffs argue that although California law requires off-duty meal periods unless (a) the nature of the work prevents an employee from being relieved of all duty, and (b) the parties have agreed in writing to an on-the-job paid meal period, AMR uniformly, and improperly, requires all class members to sign on-duty meal period agreements.

The second is AMR's uniform requirement that members of both classes remain "on duty" at all times. Plaintiffs arguing that this policy deprives class members of rest periods, which must be "off duty."

The remaining nine policies govern meal or rest periods and affect the Comm Center Class (or a portion of it) or the Field Employee Class (or a portion of it), or both. Plaintiffs characterize these as "uniform policies regarding number, duration and timing of meal and rest periods," and identify them in a chart they submitted to the trial court as part of the supplemental briefing.[6]

After a hearing, and after receiving further supplemental briefing from AMR, the trial court denied class certification for plaintiffs' causes of action under the Labor Code and the UCL arising from the 11 identified policies.[7] The court found that plaintiffs satisfied the numerosity and ascertainability requirements, but failed to satisfy the community of interest requirement. With respect to the first two policies that plaintiffs identified, described as "overarching policies" because the policies apply to all members of both classes, the trial court rested its ruling on its conclusion that a meal or rest period during which an employee remains "on call" but is not actually interrupted is properly

---

[6] One of the nine policies, identified in plaintiffs' chart as policy 11, pertains only to class members in Monterey for the period starting in July 2010. Plaintiffs concede that they cannot represent employees for these claims, which arise under a collective bargaining agreement that never affected any of the four named plaintiffs.

[7] AMR argues that plaintiffs did not ask the trial court to certify classes for their claims for declaratory and injunctive relief under the UCL. This suggestion is belied by the trial court's order, which states, "Plaintiffs assert that because their UCL . . . claims are derivative of their meal and rest break . . . claims, they too should be certified."

characterized as an "off duty" period. As we discuss below, this conclusion was based on an erroneous legal premise insofar as rest periods are concerned. With respect to the remaining nine policies, the trial court concluded that plaintiffs had failed to identify any policy that was uniformly applicable across either class. The court also determined "that the inclusion or exclusion of certain employees from certain policies (e.g., Burlingame Comm Center employees excluded from policy 10; policies 5 and 11 applicable only to Monterey[8]) raises questions of standing and adequacy of representation. In sum, Plaintiffs have not established that any of their claims based on timing, duration and accrual of rest or meal breaks may be adjudicated on a class wide basis. Individual issues clearly predominate."

Plaintiffs appealed, arguing that the order denying class certification is appealable under the "death knell" doctrine because it terminates their class claims.

After plaintiffs filed their opening brief, AMR moved to dismiss the appeal, relying on the recently-filed decision in *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 310 (*Munoz*), in which the Court of Appeal held that an order denying class certification was not appealable where representative PAGA claims remained pending. We took the fully-briefed motion under submission to be decided with the merits of the appeal.

AMR subsequently requested we take judicial notice of an unpublished opinion dismissing appeal filed in *Banta v. American Medical Response, Inc.*, Case No. B255239 (*Banta*) on February 22, 2016, and an order dismissing appeal filed in *Karapetian v. American Medical Response, Inc.*, Case No. BC405195 (*Karapetian*) on August 17, 2016. AMR explains that *Banta* and *Karapetian* were previously coordinated with plaintiffs' case at the trial court, all three cases involve claims that related companies did not provide meal periods or rest periods in compliance with California law, and all the complaints assert class claims as well as PAGA claims. The plaintiffs in *Banta*, like the

---

[8] The trial court's reference to policy 5 appears to be an error. Plaintiffs' chart states that policy 5 applies in Monterey and in other locations.

plaintiffs here, sought appellate review of a trial court order denying class certification. The plaintiffs in *Karapetian* sought appellate review of an order decertifying classes. In each case, the Court of Appeal dismissed the appeal, citing *Munoz.*

We took the unopposed requests under submission to decide with the merits of the appeal and now deny them. The opinion and order in *Banta* and *Karapetian* are court records, and we may take judicial notice of them as such pursuant to Evidence Code section 452, subdivision (d)(1). But AMR does not ask us to take judicial notice of the documents simply as court records. Instead, AMR argues that although the opinion and order are "not binding," they are "persuasive authority." Under California Rules of Court, rule 8.1115, we may not cite or rely on an unpublished opinion absent certain exceptions, which do not apply here. Accordingly, we deny the requests for judicial notice.

## DISCUSSION

A.    *Appealability*

1.    *Applicable Law*

AMR's motion to dismiss the appeal turns on the scope of the "death knell" doctrine, by which a trial court decision denying class certification is appealable when its impact is to strip a case of all but the plaintiff's individual claims. (*In re Baycol Cases I and II* (2011) 51 Cal.4th 751, 757 (*Baycol*).) The doctrine is an exception to the fundamental principle of appellate practice, codified in Code of Civil Procedure section 904.1, that an appeal may be taken only from the final judgment in an entire action. (*Id.* at p. 756.) Because an order denying class certification "effectively [rings] the death knell for the class claims, we [treat] it as in essence a final judgment on those claims." (*Id.* at p. 757.) The death knell doctrine is " 'a tightly defined and narrow concept' " (*Id.* at p. 760, quoting *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547) that depends on "the contrast between the continuing viability of individual claims and the terminated status of absent class member claims." (*Baycol* at p. 760.) Two procedural circumstances underlie the rule: "first, that the appealed-from order was the practical equivalent of a final judgment for some parties, and second, that

8

in the absence of our treating the order as a de facto final judgment, any appeal likely would be foreclosed." (*Id.* at p. 757.) Thus, the doctrine "require[s] an order that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered." (*Id.* at p. 759.)

The Court of Appeal analyzed the relationship between the death knell doctrine and class and PAGA claims in *Munoz*, where plaintiffs alleged Labor Code, UCL and PAGA claims arising from defendant's taking improper deductions from employee paychecks and providing improper pay stubs. (*Munoz*, *supra*, 238 Cal.App.4th at pp. 294-295.) The trial court denied plaintiffs' motion to certify a class of about 26,000 current and former employees for the Labor Code and UCL claims, leaving plaintiffs with their individual Labor Code and UCL claims, and their PAGA claims. (*Id.* at p. 294.) The Court of Appeal observed that the civil penalties available under PAGA are substantial, and that a prevailing plaintiff may also recover attorney fees and costs, and concluded that in a case where the alleged violator "has had many employees with earnings over many pay periods, the recovery could be quite substantial."[9] (*Id.* at p. 311.) *Munoz* was therefore unlike a case in which the denial of class certification leaves only individual claims, where "recovery is too small to justify pursuing the action" to final judgment. (*Id.* at p. 312.) The *Munoz* court concluded, "Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under . . . PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification. Denial of class certification where the PAGA claims remain

---

[9] The civil penalties available under PAGA are $100 "for each aggrieved employee per pay period for the initial violation and [$200] for each aggrieved employee per pay period for each subsequent violation." (Lab. Code, § 2699, subd. (f)(2).) Seventy-five percent of the penalties recovered are to be distributed to the Labor and Workforce Development Agency, with the remaining 25percent distributed to the aggrieved employees. (Lab. Code, § 2699, subd. (i).)

in the trial court would not have the 'legal effect' of a final judgment under the reasoning of *Baycol*." (*Id.* at p. 311.)

2. *Analysis*

AMR argues that the analysis of *Munoz* applies here, and that therefore plaintiffs' appeal should be dismissed. Plaintiffs respond that *Munoz* is wrongly decided and request that that we treat the appeal as a petition for writ of mandate if we are inclined to grant the motion to dismiss. We need not decide whether the order challenged here is appealable, because we will exercise our discretion to treat the appeal as a writ petition.

As we discuss below in Section B, the trial court's ruling on class certification rests in part on its erroneous determination of an issue that is central to the merits of plaintiffs' claims, including their claims under PAGA. We properly exercise our discretion to treat an appeal from a nonappealable order as a petition for extraordinary writ where the following conditions are met: "requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings, the briefs and record include in substance the necessary elements for a proceeding for a writ of mandate, there is no indication the trial court would appear as a party in a writ proceeding, [and] the appealability of the order is not clear." (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1367.) All those considerations are present here. The record before us allows us to resolve the issue now. There is no indication the trial court would be more than a nominal party to a writ proceeding. It was not clear whether the order denying class certification was appealable, as *Munoz* was not decided until after plaintiffs initiated this appeal. Most important, there will be needless delay and waste of the parties' and the courts' time and resources if the appeal is dismissed and the case proceeds in the trial court, only to have us later conclude that an erroneous ruling underlies not only the denial of class certification, but also the determination of the merits. (See *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 128 [listing some of the factors to consider in evaluating the adequacy of the appellate remedy, including whether the asserted error might "infect the trial"].) We conclude that writ review is appropriate.

10

B.    *Class Certification*

1.    *Applicable Law*

Class actions are authorized by statute "when the question is one of a common or general interest of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." (Code Civ. Proc., § 382.)  As the party advocating class treatment, plaintiffs " 'must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives.  [Citations.]  "In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " ' " (*Brinker*[, *supra*,] 53 Cal.4th [at p.] 1021.)" (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 529-530 (*Ayala*).)  In this case, the primary issue on appeal is the presence or absence of predominant common questions.

"[T]he 'ultimate question' for predominance is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238; see *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104-1105, 1108.)  'The answer hinges on "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (*Sav-On* [*Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319,] 327.) . . . "As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." [Citations.]' (*Brinker*[, *supra*,] 53 Cal.4th [at pp.] 1021-1022; see also *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809.)  However, . . . class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial

11

questions determining his individual right to recover following the "class judgment" ' on common issues. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459.)" (*Duran*, *supra*, 59 Cal.4th at p. 28.) "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." (*Brinker*, *supra*, 53 Cal.4th at p. 1033.)

But "predominance of common issues is . . . not the only consideration. In certifying a class action, the court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently. (*Washington Mutual* [*Bank. v. Superior Court* (2001)] 24 Cal.4th [906,] 922-923.) '[W]hether in a given case affirmative defenses should lead a court to approve or reject certification will hinge on the manageability of any individual issues. [Citation.]' (*Brinker*, [*supra*, 53 Cal.4th] at p. 1054 (conc. opn. of Werdegar, J.).) . . . [W]here a party seeks class certification based on allegations that the employer consistently imposed a uniform policy or de facto practice on class members, the party must still demonstrate that the illegal effects of this conduct can be proven efficiently and manageably within a class setting. (*Brinker*, [*supra*, 53 Cal.4th] at p. 1033; *Daily v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 989.)" (*Duran*, *supra*, 59 Cal.4th at pp. 28-29.)

"Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Brinker*, *supra*, 53 Cal.4th at p. 1025.)

We review a trial court's ruling on class certification for abuse of discretion. (*Brinker*, *supra*, 53 Cal.4th at p. 1017; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*) ["[b]ecause trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification"].) We will not disturb the ruling " 'unless (1) it is unsupported by

substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1022.) "We review the trial court's actual reasons for granting or denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling." (*Ayala*, *supra*, 59 Cal.4th at p. 530, citing *Linder*, *supra*, 23 Cal.4th at p. 436.) " 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Linder*, *supra*, 23 Cal.4th at p. 436, quoting *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656.)

    2.    *Analysis*

Because the trial court's ruling on class certification addresses the merits of plaintiffs' legal claims, we begin our analysis with background on the law requiring employers to provide meal and rest periods to their employees.

    a.    *The Obligation to Provide Meal and Rest Periods*

California employers must provide meal periods of at least 30 minutes to employees who work more than five hours per day, except that if a work period of six hours or less will complete the day's work, the meal period may be waived by mutual agreement of employer and employee. (Lab. Code,[10] § 512, subd. (a); Cal. Code Regs., tit. 8, § 11090, subd. (11)(A).) Employers must provide a second meal period of at least 30 minutes to employees who work more than 10 hours per day, except that if the total hours worked is 12 or less and the first meal period has not been waived, the second meal period may be waived by mutual agreement of employer and employee. (§ 512, subd. (a); Cal. Code Regs., tit. 8, § 11090, subd. (11)(B).)

Employers may not require employees to work during those meal periods. (§ 226.7, subd. (a).[11]) "Unless the employee is relieved of all duty during a 30 minute

_____

[10] Subsequent statutory references are to the Labor Code unless otherwise stated.

[11] Here and elsewhere, we refer to section 226.7 as originally enacted. (Stats. 2000, ch. 876, § 7.) Section 226.7 has been amended twice since plaintiffs filed their complaint, but the revisions are not relevant here. (Stats. 2013, ch. 719, § 1; Stats. 2014, ch. 72, § 1.)

13

meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, § 11090, subd. (11)(C).) Thus, "[a]bsent circumstances permitting an on-duty meal period, an employer's obligation is to provide an off duty meal period: an uninterrupted 30-minute period during which the employee is relieved of all duty." (*Brinker, supra*, 53 Cal.4th at p. 1035 [construing Cal. Code Regs., tit 8, § 11050, subd. (11)(A), which contains the same language as Cal. Code Regs., tit. 8, § 11090, subd. (11)(C)].) "The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry." (*Brinker* at p. 1040.) If an employer does not provide a meal period as required, the employer must pay the employee an hour of pay at the employee's regular hourly rate for each workday that the meal period is not provided. (§ 226.7, subd. (b); Cal. Code Regs., tit. 8, § 11090, subd. (11)(D).)

California law requires employers to provide employees who work at least three and one-half hours with paid rest periods at the rate of 10 minutes rest time for every four hours "or major fraction thereof" of work. (Cal. Code Regs., tit. 8, § 11090, subd. (12)(A).) Rest periods count as time worked (*ibid.*), but employers may not require employees to work during those rest periods. (§ 226.7, subd. (a).)

In *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 264 (*Augustus*), our Supreme Court recently interpreted the rest period requirement for security guards, which is defined by the same wage order at issue here.[12] (Cal. Code Regs., tit. 8,

_____

[12] *Augustus* interpreted IWC Wage Order 4-2001, codified in subdivision 12 of California Code of Regulations, title 8, section 11040. (*Augustus*, *supra*, 2 Cal.5th at p. 260.)

14

§ 11090, subd. (12).)  In *Augustus*, the Supreme Court addressed two questions.  First, the court asked whether the wage order requires employers to provide employees with off-duty rest periods, defined as "time during which an employee is relieved from all work-related duties and free from employer control." (*Augustus*, *supra*, 2 Cal.5th at p. 264.) The court answered that question in the affirmative. (*Id.* at p. 269.)  Second, the court asked whether an employer can satisfy its obligation to provide an off-duty rest period when it requires employees to remain on call, and concluded that the answer is no. (*Ibid.*)

The court noted that the length of a required rest period, 10 minutes, "impose[s] practical limitations on an employee's movement" during that time:  "[D]uring a rest period an employee generally can travel at most five minutes from a work post before returning to make it back on time.  Thus, one would expect that employees will ordinarily have to remain onsite or nearby.  This constraint, . . . common to all rest periods, is not sufficient to establish employer control.  But now add to this state of affairs the additional constraints imposed by on-call arrangements.  Whatever else being on call entails in the context of a required rest break, that status compels employees to remain at the ready and capable of being summoned to action (see e.g. *Mendiola* [*v. CPS Security Solutions, Inc.* (2015)] 60 Cal.4th [833,] 837.)  Employees forced to remain on call during a 10-minute rest period must fulfill certain duties:  carrying a device or otherwise making arrangements so the employer can reach the employee during a break, responding when the employer seeks contact with the employee, and performing other work if the employer so requests.  These obligations are irreconcilable with employees' retention of freedom to use rest periods for their own purposes. (*Morillon v. Royal Packing Co.* (2000) 22 Cal.4th 575, 586.)" (*Augustus, supra,* 2 Cal.5th at p. 270.)  Therefore, during rest periods, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an

15

employee remain on call."[13] (*Id.* at p. 273.) If an employer does not provide a rest period as required, the employer must pay the employee an hour of pay at the employee's regular hourly rate for each workday that the rest period is not provided. (§ 226.7, subd. (b); Cal. Code Regs., tit. 8, § 11090, subd. (12)(B).)

b. *AMR's Overarching Meal and Rest Period Policies*

The trial court believed that "in order to determine whether the lawfulness of AMR's overarching meal and rest break policies can be established on a class wide basis, it must resolve" a preliminary legal issue, specifically, "whether a break during which an employee remains 'on call' can ever be in compliance with the applicable sections of the Labor Code and the IWC Wage Orders." The trial court drew on authority that there is nothing inherently illegal about a " 'blanket agreement for on-duty meal periods . . . so long as the conditions necessary to establish that the nature of the employee's work prevents the employee from being relieved of all duty are met for each applicable on-duty meal period taken.' " (DLSE Opinion Letter, June 9, 2009, p. 9.[14]) From that, the trial court concluded that a "meal break *or a rest break* may be legally compliant even if the

---

[13] Our Supreme Court emphasized that *Augustus* does not prohibit an employer from recalling employees while they are on rest breaks should it be necessary, and stated that "[n]othing in our holding circumscribes an employer's ability to reasonably reschedule a rest period when the need arises." (*Augustus*, *supra*, 2 Cal.5th at p. 271.) The Supreme Court observed that "employers who find it especially burdensome to relieve their employees of all duties during rest periods—including the duty to remain on call" could provide another rest period to replace the one that was interrupted, or pay the employee the premium set forth in the applicable wage order and section 226.7. (*Id.* at p. 272.) These "options should be the exception rather than the rule," so any "employer [who] seeks to be excused generally from compliance" with the rest period requirement should request an exemption from the DLSE. (*Id.* at p. 272, fn. 14; see Cal. Code Regs., tit 8, § 11090, subd. (17) [authorizing applications for exemption from rest period requirements of subdivision (12)].)

[14] The trial court took judicial notice of this opinion letter on its own motion. Although DLSE opinion letters are not controlling upon the courts, they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." (*Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11, internal quotation marks omitted.)

16

employee remains 'on call' during the break." (Italics added.) The trial court then went further, and without citing any authority, concluded that "if a break is not actually interrupted, then it may properly be characterized as 'off-duty' if it otherwise meets the criteria set forth in the applicable Wage Orders." The court concluded that this interpretation of off-duty meal and rest breaks was "reasonable as applied to the work performed by the putative class members in this case."

Plaintiffs argue that the trial court's conclusions as to predominance rest on erroneous assumptions about the characteristics of off-duty meal and rest periods.

i.        *Meal Periods*

Our Supreme Court has held that an employer satisfies its obligation to provide meal periods "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry." (*Brinker*, *supra*, 53 Cal.4th at p. 1040.) Furthermore, "the issue of different industry practices is a factual determination." (*Driscoll v. Granite Rock Co.* (2016) 6 Cal.App.5th 215, 224.) The DLSE has opined that an employee required to carry a pager has a duty-free meal period for purposes of compensation unless he or she "responds, as required, to a pager call during the meal period." (DLSE Opinion Letter, Jan. 28, 1992, p. 3.) Accordingly, the trial court appropriately rejected plaintiffs' view that an on-call meal period is necessarily "on-duty" for purposes of the wage and hour laws. Thus we disagree with plaintiffs' contention that the trial court's denial of class certification as to the overarching meal period policy relied on an erroneous legal assumption.

The trial court reasoned that to determine whether AMR's meal break policy is lawful, the court must determine "whether there is a valid on-duty meal break agreement [and] also the circumstances in which any such agreement is invoked to justify an interruption." AMR came forward with evidence to show that employees in different operations are dispatched and take meal periods in different ways. As a result, substantial evidence supports the trial court's conclusion that individual inquiries would be

17

necessary to determine which particular meal breaks were uninterrupted (and thus off-duty) and which were interrupted (and thus on-duty), and then, as to the interrupted periods, whether the necessary conditions were met to establish that the nature of the work prevented the employee from being relieved of all duty. Substantial evidence also supports the trial court's conclusion that these individual inquiries would predominate over common inquiries, and therefore that the overarching meal period policy should not be adjudicated on a class-wide basis.

Plaintiffs argue that this case is like *Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 232-233 (*Faulkinbury*), in which a potential class of security guards presented evidence that their employer required all class members to sign on-duty meal period agreements and to take on-duty meal breaks, regardless of the job duties or locations where they worked. The Court of Appeal reversed a trial court order denying class certification, and remanded with directions to grant plaintiffs' class certification motion. (*Id.* at p. 241.) In *Faulkinbury*, the Court of Appeal concluded that "[t]he lawfulness of [defendant's] policy of requiring all security guard employees to sign the on-duty meal break agreement can be determined on a classwide basis." (*Id.* at p. 233.) The Court of Appeal further concluded "by requiring blanket off-duty meal break waivers in advance from *all* security guard employees, regardless of the working conditions at a particular station, [defendant] treated the off-duty meal break issue on a classwide basis." (*Id.* at p. 234.)

We agree with the trial court here that plaintiffs' case is distinguishable from *Faulkinbury*. There, the evidence showed that the employer's policy was consistently implemented such that employees were never "given a 30-minute, uninterrupted, off-duty meal period," (*Faulkinbury*, *supra*, 216 Cal.App.4th at p. 225.) while the evidence here is that AMR's operating units have different approaches to meal periods, and that AMR employees have received uninterrupted breaks of 30-minutes or more. The only similarity with *Faulkinbury* is the existence of a policy that employees sign on-duty meal period agreements, which does not in itself violate the law.

18

Here, in addition to concluding that individual issues predominate, the trial court's order expressed a second reason for denying class certification as to the overarching meal break policy. The court wrote that "[p]laintiffs failed to present a credible trial plan" that would allow individual inquiries to be developed in a manageable way. The lack of a credible trial plan is another ground to uphold the trial court's order denying certification as to the overarching meal period claim. (*Duran*, *supra*, 59 Cal.4th at p. 32.)

### ii. *Rest Periods*

In its brief discussion of plaintiffs' overarching rest period claim, the trial court framed the issue as follows: "Here, Plaintiffs assert that AMR's policy was for rest breaks to be taken 'on-duty,' i.e., during periods subject to 'downtime' control.[15] In other words, Plaintiffs' theory of liability similarly rests on the concept that a rest break is not 'off-duty' if the employee remains 'on-call.' As the court concluded in connection with the meal period claims, this theory is fundamentally flawed, and cannot support the conclusion that a uniform unlawful policy applied to the entire class. . . . [W]ithout a basis for a finding of uniformity, all rest break claims devolve to individual inquiries."

The trial court reached this conclusion without the benefit of our Supreme Court's decision in *Augustus*, which holds that on-call time is not off-duty and is not a rest period under California law.[16] (*Augustus*, *supra*, 2 Cal.5th at pp. 269.) Because the trial court's decision to deny class certification with respect to AMR's overarching rest period policy rests on its legal conclusion that a rest period during which an employee remains on call may be considered an off-duty rest period, and because that conclusion is incorrect under *Augustus*, we must reverse and remand even if other reasons not relied upon might support the trial court's decision. (*Ayala*, *supra*, 59 Cal.4th at p. 530.)

---

[15] AMR submitted declarations from employees who stated that they do not have scheduled rest periods, but rather have periods of downtime during which they can engage in personal activities.

[16] In a focus letter, we asked the parties to be prepared to address at oral argument how *Augustus* applies to this case, which they did.

We recognize that there may well be other bases on which the trial court may conclude on remand that plaintiffs have not shown the predominance of common issues required for class certification of their overarching rest period claim. For example, although plaintiffs presented evidence that AMR's policy is for employees to be on-call during rest periods, and that AMR has no policy or practice of paying additional compensation to employees who are not provided a rest period, as required by the wage order (Cal. Code Regs., tit. 8, § 11090, subd. (12)(A)), AMR presented evidence that different policies and practices have applied at different times and places and to different types of employees.

In any event, we will vacate the trial court's order insofar as it applies to the overarching rest period policy and we leave the question whether to certify the overarching rest break claims to the trial court on remand.

c.      *AMR's Other Meal and Rest Period Policies*

We turn now to the trial court's denial of class certification with respect to nine other AMR meal and rest period policies, which plaintiffs contend are reflected in collective bargaining agreements and are "facially non-compliant with California law governing timing, duration, and accrual" of meal and rest periods. Plaintiffs argue that these "uniform policies," which they numbered 3 through 11 and identified in a chart, violate the law independent of AMR's overarching policies. Plaintiffs concede that they cannot represent employees affected by policy 11, which applies only to AMR's employees in Monterey starting in July 2010. This leaves eight policies, numbered 3 through 10, at issue on appeal.

The trial court's reason for denying certification was that plaintiffs failed to identify "any policy . . . that is uniformly applicable across either class," and therefore did not establish that their claims can be adjudicated on a class-wide basis and did not show that common issues predominate. In addition, the trial court questioned whether plaintiffs had demonstrated standing and adequacy of representation for those claims.

In arguing that the trial court erred, plaintiffs do not discuss the nine policies individually, nor do they urge us to consider the policies individually. They do not

20

challenge the trial court's finding that none of the policies is uniform as to either class. Instead, plaintiffs advance two arguments to support their view that the trial court erred in denying class certification, but neither of them has merit. First, plaintiffs argue that the trial court erroneously assumed that for a class to be certified, all class members' claims must be uniform. This argument mischaracterizes the trial court's ruling. The trial court stated that class members' claims must rest on a uniform policy, not that the claims must be uniform. The trial court's inquiry on class certification necessarily considers how plaintiffs will show AMR's potential liability to a class. Plaintiffs' argument, however, rests on case law that addresses damages, rather than liability. Plaintiffs cite *Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th 319 (*Sav-on Drug*), for the proposition that class certification does not require that the "class members' claims be uniform or identical." (*Id.* at p. 338.) That our Supreme Court in *Sav-on Drug* was referring to questions of damages is clear from its citation to *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 (*Vasquez*) to support the statement and its including a pertinent quotation from *Vasquez*: " 'a community of interest does not depend upon an identical recovery.' " (*Sav-on Drug*, *supra*, 34 Cal.4th at p. 338, quoting *Vasquez*, *supra*, 4 Cal.3d at p. 809.) The trial court concluded that plaintiffs failed to identify a uniform policy, and plaintiffs do not argue otherwise. Indeed, they appear to concede that none of the policies covers the entirety of either of the subclasses they have proposed.

Second, plaintiffs argue that substantial evidence does not support the trial court's conclusion that the creation of subclasses would not permit effective management of proceedings concerning the allegedly improper policies. Plaintiffs contend that the trial court has the obligation to "consider and certify subclasses when that will 'facilitate class treatment' or one or more parts of the case," even if the class proponent has not moved for subclasses. The trial court here fulfilled that obligation by considering subclasses, and concluding that class treatment was not appropriate on the record before it. On its own motion, the trial court considered whether plaintiffs' "chart might provide a basis for identifying some narrower class or classes (e.g., all Field Employees in Burlingame or all employees subject to a particular [collective bargaining agreement]) and allowing

21

Plaintiffs to certify such a class or classes and proceed on that basis. Unfortunately, Plaintiffs did not develop a record in a manner that would allow the court to assess the viability of one or more such narrower classes, to identify which Plaintiffs would be in a position to represent that narrower class(es) and to determine whether with respect to that narrower class(es) common issues would predominate."

Furthermore, at the hearing on plaintiffs' motion, the trial court asked plaintiffs' counsel whether additional subclasses would be required for the court to properly address the policies raised in plaintiffs' chart, and whether the named plaintiffs were affected by each of the policies. Plaintiffs' counsel said that additional subclasses were not needed, and that no additional class representatives would be required. Although the trial court specifically inquired whether the named plaintiffs had standing to raise certain claims, plaintiffs' counsel never identified which plaintiff(s) could be a representative for which subclass. Plaintiffs assert that "[t]he record shows that the group of proposed class representatives worked under all three of the CBAs as field staff and/or dispatchers. This means that at least one plaintiff is typical and adequate to represent a class or narrowed subclass on each of the nine policies." This assertion does not suffice to show that plaintiffs have met their burden to establish the predominant common questions and appropriate class representatives that are required to demonstrate a community of interest. (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) For example, plaintiffs contend that a class of Comm Center employees, excluding those in Burlingame, has claims arising from a collective bargaining agreement that is silent as to rest periods "except to provide 'the opportunity to take breaks as operationally feasible.' " Yet plaintiffs have failed to identify any representative for such a class of Comm Center employees. They have proposed Bartoni and Murray as the sole class representatives for the Comm Center Class. The only communications center at which either of them worked was in Burlingame, which means they are excluded from any subclass that might assert claims from this particular policy. As the trial court noted, this "raises questions of standing and adequacy of representation," which plaintiffs failed to address below, and likewise fail to address here.

22

On this record, we conclude that the trial court did not abuse its discretion in declining to certify a class, or classes, with respect to the nine AMR policies that plaintiffs identified in their chart.

## DISPOSITION

AMR's requests for judicial notice are denied. AMR's motion to dismiss the appeal is denied, and plaintiffs' appeal from the order denying the motion for class certification, which has been fully briefed, is deemed a petition for writ of mandate. Let a peremptory writ of mandate issue commanding the superior court to vacate the portion of its order denying class certification for plaintiffs' claims under the Labor Code and the UCL that AMR failed to provide off-duty rest periods (plaintiffs' "overarching" rest period claims). The cause is remanded to the trial court for further proceedings consistent with this opinion. The parties shall bear their own costs in this proceeding.

_____

Miller, J.


We concur:


_____

Kline, P.J.


_____

Richman, J.


24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAURA BARTONI, et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>AMERICAN MEDICAL RESPONSE WEST,<br><br>     Defendant and Respondent. | A143784<br>(Alameda County<br>Super. Ct. No. RG 083822130)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING,<br>CERTIFYING OPINION FOR<br>PUBLICATION<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on April 25, 2017, be modified as follows:

1. In the paragraph on page 5 beginning, "The trial court's thorough . . ." replace the end of the first sentence, beginning with "which held," with the following:

> which emphasized that in deciding whether to certify a class, a trial court must consider the manageability of individual issues as well as the existence of common questions (*id.* at p. 29), and held that in cases where a class claim "has the potential to raise numerous individual questions that may be difficult, or even impossible to litigate on a classwide basis[, c]lass certification is appropriate only if these individual questions can be managed with an appropriate trial plan."

2. In the paragraph on page 14 beginning "In *Augustus* . . ." the first sentence and its following parenthetical are replaced with: "In *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 264 (*Augustus*), our Supreme Court recently interpreted the rest period requirement for security guards by reference to a wage order containing language that also appears in the wage order at issue here.[12]" Footnote 12 is replaced with "*Augustus* interpreted the rest period language in IWC Wage Order 4-2001, codified in subdivision 12 of California Code of Regulations, title 8, section 11040.

25

(*Augustus*, *supra*, 2 Cal.5th at p. 260.) IWC Wage Order 9-2001, which applies in this case, contains identical rest period language. (Cal. Code Regs., tit. 8, § 11090, subd. (12).)"

3.     In the first paragraph of section B.2.b.i. of the Discussion, beginning on page 17:

a.   Add the following to the end of the quotation from *Brinker* after the words "industry to industry":  "and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law."

b.   Replace "Furthermore, 'the issue of different industry practices is a factual determination.' " and the citation to *Driscoll v. Granite Rock Co.* with "Further, what will suffice requires a factual determination."

4.     In the paragraph on page 17 beginning "The trial court reasoned" add the following footnote at the end of the second sentence:

[15] All Field Employees and Comm Center Employees sign on-duty meal period agreements and are paid for their meal time.  Furthermore, AMR's agreements with its Field Employees provide that if employees are unable to take an uninterrupted 30-minute meal period, they are entitled to receive a meal period premium of one hour's wages.  To receive the payment, employees submit "time exception reports."

The petition for rehearing is denied.  This modification does not change the judgment.

The opinion in the above-entitled matter filed on April 25, 2017, was not certified for publication in the Official Reports.  For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion, as modified, should be published in the Official Reports, and it is so ordered.

Dated: _____        _____P.J.

26

Trial Court:  Superior Court of Alameda County

Trial Judge:  Hon. Wynne S. Carvill

Attorneys for Appellants              Aaron D. Kaufman
                                      David P. Pogrel
                                      Leonard Carder LLP

                                      Joshua Konecky
                                      Todd M. Schneider
                                      Schneider Wallace Cottrell Konecky
                                             Wotkyns LLP

                                      Kimberly A. Kralowec
                                      Chad A. Saunders
                                      The Kralowec Law Group

                                      Theodore Franklin
                                      Jannah V. Manansala
                                      Weinberg Roger & Rosenfeld


Attorney for Respondent               Michael S. Kun
                                      Epstein Becker & Green, PC




A143784, *Bartoni v. American Medical Response West*