Filed 4/4/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MEGHAN SILVA et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>MEDIC AMBULANCE SERVICE, INC.,<br><br>    Defendant and Respondent. | A167098<br><br>(Solano County<br>Super. Ct. No. FCS048440) |

Plaintiff Meghan Silva filed a class action against defendant Medic Ambulance Service, Inc. (Medic) alleging it had violated labor laws by requiring that employees remain on call during their rest breaks. California voters subsequently approved a proposition enacting the Emergency Ambulance Employee Safety and Preparedness Act (EAESPA) (Lab. Code, § 880 et seq.).[1] The EAESPA provides that emergency ambulance employees "shall remain reachable" throughout their work shift and is explicit that this provision is retroactive. (§§ 887, subd. (a), 889.) In *Calleros v. Rural Metro of San Diego, Inc.* (2020) 58 Cal.App.5th 660 (*Calleros*), the Fourth District

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts A.1 and B of the Discussion.

[1] Further undesignated statutory references are to the Labor Code.

1

rejected an argument that retroactive application of the EAESPA was unconstitutional.  (*Id.* at p. 668.)

When confronted with the EAESPA and *Calleros*, Silva's counsel indicated they would proceed and appeal to the First District for a decision that disagreed with *Calleros*.  Medic filed a motion for judgment on the pleadings (MJOP) and a motion for sanctions.  The trial court granted the MJOP, and imposed a $2,000 sanction against Silva's counsel.  Silva and her counsel now appeal, renewing their argument that *Calleros* was wrongly decided and contending that the trial court abused its discretion in imposing sanctions.  We disagree and affirm.

## I.  BACKGROUND

### A.    Augustus *Decision*

In December 2016, the California Supreme Court issued its decision in *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257 (*Augustus*).  The class action plaintiffs in that case worked as security guards for ABM Security Services and were required to remain on call during rest periods. (*Id.* at p. 261.)  The trial court granted summary judgment for the plaintiffs, but the appellate court reversed.  (*Ibid.*)  The California Supreme Court granted review to answer two interrelated questions:  (1) whether off-duty rest periods are required under section 226.7 and Industrial Welfare Commission (IWC) wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040) (Wage Order 4); and (2) whether employers may require employees to remain on call during rest periods.  (*Augustus*, at p. 260.)

Section 226.7 prohibits an employer from requiring an employee to work during a "rest or recovery period" mandated pursuant to an IWC order. (§ 226.7, subd. (b).)  The IWC was delegated authority to promulgate orders regulating wages, hours and working conditions for "various occupations,

trades, and industries in which employees are employed in this state."
(§ 1173.) The IWC issued various industry-specific and occupation-specific
wage orders. (*Augustus*, *supra*, 2 Cal.5th at p. 263.) Occupational orders
only apply when a business is not covered by an industry order. Wage
Order 4 is an occupational order for persons employed in the "professional,
technical, clerical, mechanical, and similar occupations." (Cal. Code Regs.,
tit. 8, § 11040.) It requires every employer to "authorize and permit all
employees to take rest periods." (*Id.*, subd. (12)(A).)

Interpreting Wage Order 4 in *Augustus*, the California Supreme Court
determined that the term "rest period" should be given its "most common
understanding" as a period of rest during which employees are relieved from
their work duties. (*Augustus*, *supra*, 2 Cal.5th at p. 264.) Requiring
employees to remain on call could not be reconciled with this reading. (*Id.* at
pp. 269–270.) The Court explained that its interpretation of Wage Order 4
was consistent with section 226.7's prohibition on work during a rest period,
as well as opinion letters from the Division of Labor Standards Enforcement
(DLSE), the agency that enforces wage orders. (*Augustus*, at pp. 265, 267.)
*Augustus* thus concluded that Wage Order 4 and section 226.7 prohibit on-
duty rest periods. (*Augustus*, at p. 273.)

## B.    *Silva's Complaint*

In February 2017, two months after the *Augustus* decision was issued,
Silva filed a class action against Medic on behalf of herself and other
emergency medical technicians, as well as paramedics, dispatchers, and
supply service technicians employed by Medic. Silva amended her complaint
shortly thereafter. The amended complaint alleged a cause of action for
failure to provide rest breaks in violation of section 226.7 and IWC orders,
specifically citing *Augustus* and Wage Order 4. It also asserted derivative

3

claims for failure to provide accurate itemized wage statements and waiting time penalties, and violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) based on the alleged failure to provide rest breaks.

## C. Stewart I *Decision*

In December 2017, the Ninth Circuit certified questions to the California Supreme Court regarding the applicability of meal and rest period regulations to the employers of ambulance attendants working 24-hour shifts. (*Stewart v. San Luis Ambulance, Inc.* (9th Cir. 2017) 878 F.3d 883, 884 (*Stewart I*).) The plaintiff in that case had worked as an emergency medical technician and alleged that the defendant ambulance company violated state and federal labor laws by requiring him to remain on duty throughout his shifts. (*Id.* at p. 885.) The Ninth Circuit explained that, while the California Supreme Court had interpreted Wage Order 4 to require off-duty rest periods, "*Augustus* does not control the interpretation of Wage Order 9." (*Stewart I*, at p. 886.)

IWC wage order No. 9-2001 (Wage Order 9) is an industry order that regulates wages, hours, and working conditions in the transportation industry. (Cal. Code Regs., tit. 8, § 11090.) California courts have applied Wage Order 9 to "ambulance drivers and attendants." (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 844, fn. 13.) Like Wage Order 4, Wage Order 9 requires every employer to "authorize and permit all employees to take rest periods." (Cal. Code Regs., tit. 8, § 11090, subd. (12)(A).)

But *Stewart I* explained that importing the interpretation of Wage Order 4 from *Augustus* to Wage Order 9 "would create a conflict" within its provisions, as another section of Wage Order 9 "affirmatively contemplates

4

'[twenty-four ]hour shifts *of duty*' for ambulance attendants." (*Stewart I*, *supra*, 878 F.3d at p. 886, quoting Cal. Code Regs., tit. 8, § 11090, subd. (3)(K).) Moreover, the Ninth Circuit noted that "for the past twenty-seven years, California courts have permitted employers of ambulance attendants to exclude sleep periods from compensable time without a written agreement, despite the fact that the employer retains control throughout the twenty-four hours to wake the employees from their sleep every time an emergency arises." (*Stewart I*, at pp. 886–887.) "This precedent, unique to the ambulance industry, makes the applicability of *Augustus* to Wage Order 9 a difficult open question." (*Stewart I*, at p. 887.)

The California Supreme Court granted the Ninth Circuit's request. (*Stewart v. San Luis Ambulance, Inc.*, S246255, Supreme Ct. Mins., Mar. 28, 2018.)

### D. *Proposition 11 and the EAESPA*

In November 2018 (with these questions still pending before the Court), California voters approved Proposition 11, which enacted the EAESPA. Section 887, subdivision (a) of the EAESPA provides: "In order to maximize protection of public health and safety, emergency ambulance employees shall remain reachable by a portable communications device throughout the entirety of each work shift." Section 888 defines an "emergency ambulance employee" under the EAESPA. Section 889 then states: "Notwithstanding any other provision of law to the contrary, Sections 887 and 888 are declaratory of, and do not alter or amend, existing California law and shall apply to any and all actions pending on, or commenced after, October 25, 2017, alleging a violation of [Wage Order 9] or any amended, successor, or replacement law, regulation, or IWC order."

5

Voting materials indicated that a "YES" vote on Proposition 11 would allow private ambulance companies to "continue their current practice of having emergency medical technicians (EMTs) and paramedics stay on-duty during their meal and rest breaks in order to respond to 911 calls." (Voter Information Guide, Gen. Elec. (Nov. 6, 2018) quick reference guide, p. 10.)

According to analysis by the Legislative Analyst, private ambulance companies own and operate most ambulances in California, and provide approximately 75 percent of all emergency ambulance rides. (Voter Information Guide, Gen. Elec. (Nov. 6, 2018) p. 62.) Ambulance companies contract with counties to respond to emergency calls within a certain amount of time. (*Ibid.*) Ambulance crews are positioned throughout an area to meet these contracted response times and when one crew responds to an emergency call, others may need to reposition. (*Id.* at p. 63.) Accordingly, breaks may be interrupted by emergency calls or requests to reposition. (*Ibid.*) "In practice, EMTs and paramedics are 'on call' for their entire work shift in case they receive an emergency call." (*Ibid.*) However, "most ambulance shifts include down time between emergency calls" and "[a]s a result, crews often have enough down time in their shift to take uninterrupted meal and rest breaks even though they are technically on call." (*Ibid.*)

It is evident that Proposition 11 was proposed in response to *Augustus*: voting materials summarized the decision and then stated that, due to the "similarities" in labor laws and industry practices for private security guards and emergency ambulance employees, "it appears likely that the *Augustus* decision will also apply to EMTs and paramedics in the near future." (Voter Information Guide, Gen. Elec. (Nov. 6, 2018) analysis of Prop. 11 by the Legislative Analyst, p. 64.) Proposition 11 would thus preclude any need for

6

private ambulance companies to comply with *Augustus* and avoid two sets of related costs. (*Ibid.*) First, if ambulance companies had to provide off-duty meal and rest breaks under *Augustus*, they "would likely have to operate significantly more ambulances in each area than they do now," which "would increase costs to ambulance companies—potentially by more than $100 million each year." (*Ibid.*) These higher costs would "be borne by counties," "by reducing ambulance company payments to them and/or by requiring county payments to ambulance companies to ensure adequate service." (*Id.* at pp. 64–65.) Second, the retroactive effect of Proposition 11 would limit "potentially large, one-time costs" that private ambulance companies might face as a result of active lawsuits regarding meal and rest break violations. (*Id.* at p. 65)

## E. Stewart II *Decision*

The California Supreme Court subsequently dismissed consideration of the questions posed by the Ninth Circuit in *Stewart I.* (*Stewart v. San Luis Ambulance, Inc.*, S246255, Supreme Ct. Mins., Sept. 18, 2019.) It explained: "In light of the passage of Proposition 11, the Emergency Ambulance Employee Safety and Preparedness Act (Gen. Elec. (Nov. 6, 2018)[)], resolution of the questions posed by the Ninth Circuit Court of Appeals is no longer 'necessary . . . to settle an important question of law.' " (*Ibid.*)

The Ninth Circuit then issued an unpublished memorandum decision affirming summary judgment for the defendant ambulance company. (*Stewart v. San Luis Ambulance, Inc.* (9th Cir. 2020) 818 Fed. Appx. 705, 709 (*Stewart II*).) It concluded that the EAESPA applied and because it " 'merely clarified existing law, no question of retroactivity is presented.' " (*Stewart II*, at p. 708.)

7

*F.*     **Calleros** *Decision*

In November 2020, the Fourth District issued its decision in *Calleros*. (*Calleros*, *supra*, 58 Cal.App.5th at p. 663.)  The class action plaintiffs in that case had alleged violations of section 226.7 and Wage Order 9 for requiring that ambulance employees remain on call during rest breaks.  (*Calleros*, at p. 663.)  On appeal from the denial of their class certification motion, the plaintiffs argued that retroactive application of the EAESPA was unconstitutional because it impermissibly interfered with their vested rights. (*Calleros*, at p. 667.)

*Calleros* concluded that, even assuming the plaintiffs had such vested rights, the EAESPA's retroactive application satisfies constitutional requirements.  (*Calleros*, *supra*, 58 Cal.App.5th at p. 667.)  It explained that there are "significant state interests" underlying the EAESPA to protect and promote public health and safety, and that retroactive application "was sought to achieve the public fiscal and safety goals underlying the new provisions by making clear the ambulance entities would not be penalized for ensuring their workers had been previously available at all times to respond to emergencies."  (*Calleros*, at pp. 668–669.)  It also explained that the plaintiffs "have not shown any reliance, much less justifiable reliance, on the claimed vested right" because "ambulance entities have long required ambulance workers to carry communication devices during their rest breaks," and "*Augustus* had never been extended to ambulance workers before the voters passed Proposition 11."  (*Id.* at p. 669)

Two requests for depublication of *Calleros* were filed with the California Supreme Court, including one by Silva's counsel.  The Court denied the requests and declined review on its own motion.  (*Calleros v. Rural Metro of San Diego Inc.*, S266626, Supreme Ct. Mins., Mar. 24, 2021.)

8

### G. Medic's Motions

After the *Calleros* decision was issued and requests for its depublication were denied, Silva's counsel represented to the trial court that Silva "does not intend to dismiss the case and believes the opinion from the 4th District was erroneously decided and will go before the Court of Appeal to have the decision reversed." Medic filed its MJOP, arguing Silva's claims were foreclosed by the EAESPA and citing *Calleros*, *Stewart I*, and *Stewart II*. Medic noted that the first amended complaint alleged a violation of Wage Order 4, presumably to strengthen its reliance on *Augustus*, but that Wage Order 9 applied to ambulance employees like Silva and the putative class members.

Medic also filed a motion requesting $20,000 in sanctions to be imposed against Silva's counsel, arguing that counsel had maintained the action despite legal authorities that "unequivocally foreclose" the claims.

### H. Trial Court's Ruling

The trial court granted Medic's MJOP and dismissed Silva's amended complaint without leave to amend. It explained: "As a trial court[,] this court is bound by an opinion of the Court of Appeal so long as there is no conflict with the California Supreme Court or another appellate decision (and for *Calleros* there is not). [Citation.] *Calleros* directly states that Plaintiff, whose case is functionally identical to the case before that court, cannot state a valid claim because the [EAESPA] retroactively declares that Defendant was not required to provide duty-free rest breaks. It speaks to and rejects her argument of unconstitutional interference with a vested property right." The trial court imposed $2,000 in sanctions against Silva's counsel,

9

concluding that no reasonable attorney would find merit in her claim in light of *Calleros*.

Silva and her counsel filed timely notices of appeal.

## II.  DISCUSSION

### A.    MJOP

We begin with Silva's challenge to the trial court's ruling on the MJOP. Our review is de novo.  (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515.)  The crux of Silva's argument here is that *Calleros* was wrongly decided and retroactive application of the EAESPA is unconstitutional. Before turning to this argument, however, we address two threshold issues.

#### 1. *Wage Order 4 vs. Wage Order 9*

Medic contends that judgment on the pleadings was proper because, in her cause of action for violation of section 226.7 and IWC wage orders, Silva relied on the inapplicable Wage Order 4, not the applicable Wage Order 9.  As described above, the IWC promulgated different industry-specific and occupation-specific wage orders " 'that apply to distinct groups of employees.' "  (*California Correctional Peace Officers' Assn. v. State of California* (2010) 188 Cal.App.4th 646, 654–55.)  California courts have made clear that Wage Order 9, an industry-specific wage order governing the transportation industry, applies to ambulance workers.  (*Mendiola v. CPS Security Solutions, Inc.*, *supra*, 60 Cal.4th 833, 844, fn. 13; see also *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 22 (*Monzon*) [ambulance drivers and attendants "are covered by" Wage Order 9].)  The DLSE has also made clear that occupation-specific wage orders, like Wage

10

Order 4, only apply when a business is *not* covered by an industry order. That is not the situation here.

Silva responds that, even if she cited the wrong wage order in her amended complaint, it is not grounds for granting a MJOP because she has still stated sufficient allegations for her cause of action. "A motion for judgment on the pleadings presents the question of whether 'the plaintiff's complaint state[s] facts sufficient to constitute a cause of action against the defendant.' " (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 272.) " ' "Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties." [Citation.] "Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory." ' " (*Ibid.*) Given this framework, we agree that Silva's citation to the inapplicable Wage Order 4 *alone* is not a sufficient basis for granting the MJOP, as she included more general allegations about a violation of IWC "wage orders" and failure to provide off-duty rest breaks. But as explained below, even if Silva had cited the applicable Wage Order 9, we conclude that these allegations were insufficient to constitute a viable cause of action in light of the EAESPA.

### 2. *Clarification vs. Change in Law*

Medic contends that we need not address the retroactivity of the EAESPA because it clarified existing law. " '[A] statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment' 'because the true meaning of the statute remains the same.' " (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471.) In other words, no question of retroactivity is presented because the statute "would not have changed anything." (*Id.* at p. 472.)

In determining whether a statute clarifies or changes existing law, we first look to whether the California Supreme Court has " 'finally and definitively' " interpreted the former law. (*Carter v. California Dept. of Veteran Affairs* (2006) 38 Cal.4th 914, 922 (*Carter*).) Here, Silva contends that *Augustus* " 'finally and definitively' " interpreted the rest period provision in not only Wage Order 4, but "all other" IWC wage orders with the provision. (*Carter*, at p. 922.)

We are not persuaded. The California Supreme Court was clear on the scope of its review in *Augustus*: to determine whether Wage Order 4 prohibited on-duty rest periods. (*Augustus*, *supra*, 2 Cal.5th at p. 273.) In concluding that it did, the Court interpreted the specific language in Wage Order 4. (*Augustus*, at p. 264.) It did not make any sweeping holding regarding other IWC wage orders.[2]

Silva argues that *Augustus* nonetheless applies with equal force to Wage Order 9 because they both contain the same provision requiring employers to " 'authorize and permit all employees to take rest periods.' " (*Augustus*, *supra*, 2 Cal.5th at p. 267 [explaining rest period provision in Wage Order 4 is "identical to the rest period provisions of most other wage orders"].) But as the Ninth Circuit explained in *Stewart I*, there are other important differences in the language of Wage Order 9 and its interpretation by California courts. (*Stewart I*, *supra*, 878 F.3d at p. 886.) Wage Order 9 expressly contemplates that ambulance drivers and attendants may be

---

[2] Silva repeatedly cites a phrase in the introductory paragraph of *Augustus*—that " 'state law prohibits on-duty and on-call rest periods' "—to suggest otherwise. (*Augustus*, *supra*, 2 Cal.5th at p. 273.) Given that the Court explicitly identified its scope of review and analysis to section 226.7 and Wage Order 4, including in the introductory paragraph, we read this phrase as a reference to that law and not all IWC wage orders. (*Augustus*, at p. 273.)

scheduled for "24-hour shifts of duty" and during those shifts, they can agree to exclude certain sleep and meal periods from compensable time. (Cal. Code Regs., tit. 8, § 11090, subd. (3)(K); *Monzon*, *supra*, 224 Cal.App.3d at p. 46 [concluding agreement to exclude sleep time need not be written].) This provision was added when the IWC " 'recognized the unique need for 24-hour coverage by ambulance service and the special circumstances under which most ambulance drivers work, and allowed relaxation of daily overtime requirements for such drivers under certain protective conditions.' " (*Monzon*, at p. 44.) Given these differences, we cannot conclude that *Augustus* " 'finally and definitively' " answered the question of whether Wage Order 9 prohibited on-duty rest periods. (*Carter*, *supra*, 38 Cal.4th at p. 922.)

Without such an answer, we must then look to "all pertinent circumstances and considerations" in deciding whether a statute clarifies or changes existing law. (*People v. Franklin* (1999) 20 Cal.4th 249, 256.) A legislative declaration that a statute merely clarifies existing law is " 'a factor for a court to consider,' " but is " ' "neither binding nor conclusive" ' " as " 'interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts.' " (*Carter*, *supra*, 38 Cal.4th at p. 922.) " '[I]n interpreting a voter initiative . . . , we apply the same principles that govern statutory construction.' " (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037.)

Here, the EAESPA explicitly states that "Sections 887 and 888 are declaratory of, and do not alter or amend, existing California law." (§ 889.) Other circumstances support this statement. Prior to enactment of the EAESPA, the legality of on-duty rest periods for ambulance workers was an open question. No authority had extended *Augustus* to employees governed by Wage Order 9. Indeed, the California Supreme Court granted the Ninth

13

Circuit's request from *Stewart I* to answer the question. Voting materials on Proposition 11 described the legal status of labor law requirements on the ambulance industry as "currently in flux." (Voter Information Guide, Gen. Elec. (Nov. 6, 2018) analysis by the Legislative Analyst, p. 65.) In approving Proposition 11, voters "promptly react[ed] to the emergence of a novel question of statutory interpretation." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.) As our Supreme Court has explained, such a reaction suggests the statute was "an effort only to clarify" the "true meaning" of existing law. (*Ibid.*)

In sum, we conclude that the EAESPA clarified existing law and therefore retroactivity analysis is unnecessary. The EAESPA applies to Silva's claim and Medic was entitled to judgment on the pleadings.

### 3. *Retroactivity of the EAESPA*

Even if we were to conclude otherwise that the EAESPA did change existing law, we nonetheless agree with *Calleros* that retroactive application of the EAESPA satisfies constitutional requirements. (*Calleros*, *supra*, 58 Cal.App.5th at p. 667.)

Retroactive application of a statute may be unconstitutional "if it deprives a person of a vested right without due process of law." (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 (*Buol*).) Vested rights, however, "are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people." (*Id.* at pp. 760–761.) Accordingly, to determine whether a retroactive statute contravenes the due process clause, "we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law,

14

the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 (*Bouquet*).) "Where 'retroactive application is necessary to subserve a sufficiently important state interest,'" however, "the inquiry need proceed no further." (*Buol*, at p. 761.)

As a preliminary matter, we are not persuaded that Silva or putative class members had any "vested right[s]" impaired by retroactive application of the EAESPA. (*Buol, supra*, 39 Cal.3d at p. 756.) Silva relies on *Hall v. Cultural Care USA* (N.D.Cal. July 22, 2022, No. 3:21-cv-00926) 2022 U.S.Dist. Lexis 130582 (*Hall*), an unpublished federal decision[3] declining to retroactively apply a new legal test for classifying workers as employees versus independent contractors that would take away wages earned under the former test. (*Id.* at p. \*12.) But *Hall* is distinguishable because here, Silva contends that she and putative class members had a vested right to unpaid wages accrued from the purported violation of their vested right to off-duty rest breaks under *Augustus*. For the reasons discussed above, *Augustus* did not create any such right for ambulance industry employment governed by Wage Order 9.

Even assuming there were such vested rights, we agree with *Calleros* that the *Bouquet* factors support retroactive application of the EAESPA. (*Calleros, supra*, 58 Cal.App.5th at p. 667.) As to the first factor (significance of state interest), the EAESPA is explicit that its purpose "is to enhance public health and safety by ensuring that emergency ambulance employees . . . are available to respond to 911 emergency-type requests for medical

---

[3] We note that the prohibition on citing unpublished California opinions (Cal. Rules of Court, rule 8.1115(a)) does not apply to unpublished federal opinions. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18.)

15

assistance at all times." (§ 882.)  As to the second factor (importance of retroactivity to effectuate state interest), *Calleros* explained that "retroactive application of Proposition 11 was sought to achieve the public fiscal and safety goals underlying the new provisions by making clear the ambulance entities would not be penalized for ensuring their workers had been previously available at all times to respond to emergencies." (*Calleros*, at pp. 668–669.)  Silva contends that there is "no logical showing" that could support this analysis.  We disagree.  Voting materials for Proposition 11 made clear that active lawsuits alleging past rest break violations could expose private ambulance companies to "potentially large, one-time costs," and that those costs would ultimately be borne by counties and the public, either in reducing the availability of ambulance services or the availability of funds for providing such services.  (Voter Information Guide, Gen. Elec. (Nov. 6, 2018) analysis by the Legislative Analyst, p. 65.)

As to the remaining factors related to reliance on the former law, *Calleros* concluded that the plaintiffs had "not shown any reliance, much less justifiable reliance, on the claimed vested right." (*Calleros*, *supra*, 58 Cal.App.5th at p. 669.)  Silva points to her filing of this action (and *Calleros*), but presents no authority to support her position that initiating litigation is sufficient to show reliance under the *Bouquet* factors, let alone that such reliance would outweigh the other state interest factors.  This is particularly true given a " 'sufficiently important state interest' " can end the analysis on this factor alone.  (*Buol*, *supra*, 39 Cal.3d 751, 761.)  Silva again cites *Hall*, but in that case the only state interest proffered by defendant was that the new legal test "ensures 'consistency and stability' " in employment rules.  (*Hall*, *supra*, 2022 U.S.Dist. Lexis 130582, at p. *13.)  *Hall* determined that retroactive application was "not of much 'importance' to the 'effectuation

16

of that interest.' " (*Ibid.*) As for the reliance factors, both employers and workers had "necessarily relied" on the former legal test for classification of employees and independent contractors for " 'more than a century.' " (*Id.* at pp. *13–*14.) Retroactive application would "vitiate" this "reasonable reliance." (*Id.* at p. *16.) Here, unlike the law in *Hall*, the EAESPA advances an important state interest that retroactive application helps effectuate, and Silva has not shown reliance that precludes such application.

In sum, we conclude the trial court did not err in retroactively applying the EAESPA under *Calleros* and granting Medic's MJOP.

## B.   *Sanctions*

Silva's counsel also challenges the trial court's imposition of sanctions. Code of Civil Procedure section 128.7 provides, in relevant part, that a court may impose sanctions for filing a pleading that is indisputably without legal merit. (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.) A claim is "legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Ibid.*) "[T]o obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable," meaning " 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Ibid.*)

"We review a Code of Civil Procedure section 128.7 sanctions award under the abuse of discretion standard." (*Peake v. Underwood, supra,* 227 Cal.App.4th at p. 441.) Silva asks us to depart from this rule, citing authority that de novo review applies where there is a question of law and no disputed facts. None of this authority is on point. (*Ponce v. Wells Fargo Bank* (2018) 21 Cal.App.5th 253, 261 [legal question about whether nonfrivolous claim can be asserted for improper purpose subject to de novo

17

review]; *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591 [legal question regarding safe harbor period to avoid sanctions subject to de novo review].)  Silva's counsel does not raise a pure question of law here, but instead challenges the trial court's determination that no reasonable attorney would have found merit in Silva's claim in light of *Calleros*.  We review that determination for abuse of discretion.  (*Peake*, at p. 441.)  In so doing, "[w]e presume the trial court's order is correct and do not substitute our judgment for that of the trial court."  (*Ibid.*)  "To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice."  (*Ibid.*)

Silva's counsel contends that the imposition of sanctions was improper because they made a "good faith argument" that *Calleros* was wrongly decided and should not be followed.[4]  Specifically, they argue that *Calleros* (1) "failed to consider how retroactive application of EAESPA would serve the state's interest in public health and safety," and (2) "ignored the plaintiffs' justifiable reliance on the law as it stood prior to the passage of EAESPA."  Neither is a reasonable reading of *Calleros*, which explicitly considered that "retroactive application of Proposition 11 was sought to achieve the public fiscal and safety goals underlying the new provisions by making clear the ambulance entities would not be penalized for ensuring their workers had been previously available at all times to respond to emergencies" and explained that the filing of litigation was not reliance on any vested rights,

---

[4] We note that Silva's counsel did not present an argument on appeal challenging the amount of sanctions imposed against them by the trial court. Any such argument is forfeited.  (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal may be deemed waived].)

18

but "at most an expectation or hope that *Augustus* would be applied to the ambulance industry." (*Calleros*, *supra*, 58 Cal.App.5th at pp. 668–669.)

Silva's counsel also argues that *Hall* provided some support for their theory that *Calleros* was wrongly decided. But *Hall* is an unpublished federal decision that, unlike *Calleros*, was not binding on the trial court. (*Airline Pilots Assn. Internat. v. United Airlines, Inc.* (2014) 223 Cal.App.4th 706, 724, fn. 7.) Moreover, as described above, *Hall* is clearly distinguishable from the instant action in at least four respects: it involved a vested right to unpaid wages, a less significant state interest proffered by the defendant, an interest that was not much effectuated by retroactivity, and reasonable reliance on the former law for over a century. (*Hall*, *supra*, 2022 U.S.Dist. Lexis 130582, at p. *13.) The trial court's determination that Silva's claim was without legal merit did not amount to a "manifest miscarriage of justice." (*Peake v. Underwood*, *supra*, 227 Cal.App.4th at p. 441.)

In sum, we conclude the trial court did not abuse its discretion in imposing sanctions against Silva's counsel.[5]

### III. DISPOSITION

The judgment is affirmed. Medic is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

---

[5] We deny Medic's request, made in its respondent's brief, that we sanction Silva's counsel in the amount of $20,000 for their "frivolous" appeal. A party requesting sanctions for taking a frivolous appeal must do so by motion with a supporting declaration. (Cal. Rules of Court, rule 8.276(a)–(b).)

19

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

CASTRO, J.*

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:        Solano County Superior Court

Trial Judge:        Hon. Alesia Jones

Counsel:

Weinberg, Roger & Rosenfeld, Jannah V. Manansala, Caitlin E. Gray, Alexander S. Nazarov and Winnie Vien for Plaintiffs and Appellants.

CDF Labor Law, Carothers DiSante & Freudenberger, Corey J. Cabral, Dalia Z. Khatib, Mark Steven Spring and Nicole A. Legrottaglie for Defendant and Respondent.

A167098
*Silva v. Medic Ambulance Service, Inc.*